Thomas BURTON, Jr., LeRoy Franks, Petitioner,

v.

UNITED STATES DEPARTMENT OF AGRICULTURE, Respondent.

George BLADES, LeRoy Franks, Petitioner,

v.

UNITED STATES DEPARTMENT OF AGRICULTURE, Respondent.

No. 81–2445.

United States Court of Appeals, Eighth Circuit.

Submitted June 16, 1982.

Decided July 26, 1982.

---

Theodore L. Johnson, III, John W. Housley, Lowther, Johnson, Lowther, Cully & Housley, Springfield, Mo., for appellant.

James Michael Kelly, Associate Gen. Counsel, Raymond W. Fullerton, Asst. Gen. Counsel, Thomas D. Edmondson, Aaron B. Kahn, Attys., U. S. Dept. of Agriculture, Washington, D. C., for appellee.

Before ROSS, Circuit Judge, MILLER,[*] Judge, and JOHN R. GIBSON, Circuit Judge.

ROSS, Circuit Judge.

This is a consolidated appeal by LeRoy Franks from a Decision and Order in HPA Docket No. 154 and in HPA Docket No. 173, by Judicial Officer Donald A. Campbell of the United States Department of Agriculture. LeRoy Franks seeks to have the above referenced decisions and orders set aside and vacated pursuant to 15 U.S.C. § 1825(b)(2) of the Horse Protection Act. Said Decisions and Orders affirmed the findings of the Administrative Law Judge (ALJ) that LeRoy Franks "allowed" his horse to be shown in a "sored" condition in violation of 15 U.S.C. § 1824.[1]

LeRoy Franks is retired from every occupation other than that of breeder and exhibitor of Tennessee Walking Horses. He owns 60 horses and employs approximately four trainers that cost him $10,000 annually. LeRoy Franks is the owner of the two horses at issue in this case, Magic's Gunsmoke, exhibited, shown and trained by Thomas Burton, Jr., and Gunsmoke's Cannonade, exhibited, shown and trained by George Blades.

On September 22, 1979, Magic's Gunsmoke was shown in the Illinois Walking Horse Celebration by Burton. It was found

---

[*] The Honorable Jack R. Miller, Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. § 1821. Definitions
(3) The term "sore" when used to describe a horse means that—
(A) an irritating or blistering agent has been applied, internally or externally, by a person to any limb of a horse,
(B) any burn, cut, or laceration has been inflicted by a person on any limb of a horse,
(C) any tack, nail, screw, or chemical agent has been injected by a person into or used by a person on any limb of a horse, or
(D) any other substance or device has been used by a person on any limb of a horse or a person has engaged in a practice involving a horse,
and, as a result of such application, infliction, injection, use, or practice, such horse suffers, or can reasonably be expected to suffer, physical pain or distress, inflammation, or lameness when walking, trotting, or otherwise moving, except that such term does not include such an application, infliction, injection, use, or practice in connection with the therapeutic treatment of a horse by or under the supervision of a person licensed to practice veterinary medicine in the State in which such treatment was given.

HORSE PROTECTION
§ 1824. Unlawful acts.
The following conduct is prohibited:
(2) The (A) showing or exhibiting, in any horse show or horse exhibition, of any horse which is sore, (B) entering for the purpose of showing or exhibiting in any horse show or horse exhibition, any horse which is sore, (C) selling, auctioning, or offering for sale, in any horse sale or auction, any horse which is sore, and (D) allowing any activity described in clause (A), (B), or (C) respecting a horse which is sore by the owner of such horse.

that Franks was not present during the show, and more importantly, the ALJ found that Franks had no knowledge that the horse was "sore" when it was exhibited.[2] The parties agree that a Designated Qualified Person examined Magic's Gunsmoke and permitted the horse to enter the show ring. After entering the ring, a trained veterinary officer, employed by the United States Department of Agriculture, indicated that he felt this horse was "sore." Upon leaving the ring, Magic's Gunsmoke was examined by veterinarians who also felt that the horse was "sore." A complaint was filed against Franks and Burton, Case # 154, for violation of the Horse Protection Act, 15 U.S.C. § 1821 et seq.[3] The ALJ found that the horse was shown in a "sore" condition, that LeRoy Franks "allowed" the horse to be shown in a sore condition within the meaning of 15 U.S.C. § 1824, and assessed a civil penalty of $2,000. The order also disqualified Franks from showing, exhibiting, or selling a horse at an auction for a period of one year.

A similar scenario occurred with Gunsmoke's Cannonade, Case # 173.[4] In this case, LeRoy Franks attended the Midwest Walking Horse Trainers Association Horse Show in Springfield, Missouri, where his horse was entered and shown by George Blades. Prior to entry into the ring, Gunsmoke's Cannonade was examined by a Designated Qualified Person who passed the horse and sent him into the show ring. After entering the ring the horse was observed by a spotter employed by the United States Department of Agriculture. In his opinion, the horse was being shown in a "sore" condition, and after an inspection, the veterinary officers from the United States Department of Agriculture concurred. At the hearing, George Blades testified that Franks had indicated that he did not "want anything on his horses," an apparent reference to soring. As in Case # 154, the ALJ found that Franks had no knowledge that his horse was being shown in a "sore" condition. A complaint was filed against Franks and George Blades for violation of the Horse Protection Act.[5] The ALJ found, as in Case # 154, that Franks "allowed" Gunsmoke's Cannonade to be shown in a "sore" condition and assessed the same penalty as was given in Case # 154. On appeal, the Judicial Officer of the Department of Agriculture, affirmed the findings of the ALJ in both cases. However, he increased the disqualification from showing, exhibiting, or selling a horse at an auction in Case # 173 from one year to five years pursuant to 15 U.S.C. § 1825. These two cases were consolidated for appeal.

In the present case we find that the Secretary erred as a matter of law.

The central issue on appeal is what Congress intended the word "allow" to mean in 15 U.S.C. § 1824(2)(D) of the Horse Protection Act. The Secretary argues that Congress intended to connote a positive duty on owners to prevent the soring of their horses. In other words, the Secretary urges that owners be held to a strict liability standard, and that knowledge of the horse's "soreness" is not required under 15 U.S.C. § 1824(2)(D). The Secretary offers no support in the way of case law or legislative history to support this assertion.

 LeRoy Franks, on the other hand, argues that the term "allow" requires that one must know the horse was "sore" at the time it was exhibited. In both of these cases, the record clearly shows that he did not in fact have knowledge that his horses were being shown in a sore condition.

---

2. Thomas Burton, Jr. testified that he understood that Franks did not want him to show a sore horse.

3. The complaint against Thomas Burton, Jr., was settled prior to this appeal with a negotiated penalty of $1,000.

4. There is no evidence in the record that indicates on what date Mr. Franks first became aware of the violation in Case # 154. · Both parties agree, however, that an investigator's interview form indicates that Mr. Franks was not aware of the alleged violation prior to November 7, 1979, over one month after the show in Case # 173.

5. The complaint against George Blades was settled prior to this appeal with a negotiated penalty of $1,000.

Absent clear, expressed intent by Congress to hold owners of horses strictly liable for violation of the Horse Protection Act, 15 U.S.C. § 1824(2)(D), we hold that the owner cannot be held to have "allowed" a "sore" horse to be shown when the following three factors are shown to exist: (1) there is a finding that the owner had no knowledge that the horse was in a "sore" condition, (2) there is a finding that a Designated Qualified Person examined and approved the horse before entering the ring, and (3) there was uncontradicted testimony that the owner had directed the trainer not to show a "sore" horse. All of these factors taken together are sufficient to excuse an owner from liability.

In both cases, we find that all of the above requirements were met. Therefore, we reverse the Secretary and find that LeRoy Franks did not "allow" his horses to be shown in a "sore" condition in violation of 15 U.S.C. § 1824(2)(D).