Eldon STAMPER and Sonya Stamper (dba Chezmyrae Walkers), Ron H. Fox, Respondents and Appellants,

v.

SECRETARY OF AGRICULTURE, United States Department of Agriculture, Complainants and Appellees.

No. 83–7063.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 13, 1983.

Decided Jan. 4, 1984.

George E. Murphy, Bolling, Walter & Gawthrop, Sacramento, Cal., for respondents and appellants.

Raymond W. Fullerton, Aaron B. Kahn, Washington, D.C., for complainants and appellees.

Before WALLACE, ALARCON and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge.

This appeal arises under the Horse Protection Act (the Act), 15 U.S.C. §§ 1821–31 (1976). Mr. and Mrs. Stamper (the Stampers) were the owners, and Ross Fox (Fox) was the trainer, of Red Bluff's Playboy (Playboy), a Tennessee Walking Horse. At a horse show on September 22, 1979, inspectors of the United States Department of Agriculture (the Department) found Playboy to be "sore" within the meaning of the Act. The Stampers and Fox appeal from the Department Judicial Officer's reversal of the ALJ's dismissal of the subsequent charges. The Judicial Officer found all three respondents in violation of the Act, and imposed fines and suspensions.

We find that substantial evidence in the record supports the Judicial Officer's reversal, and that the imposed penalties were not an abuse of discretion. We further hold that the Department need not establish intent in order to find a violation of the Act. It is unnecessary to decide whether an owner, without knowledge of soreness, may be liable when the horse is exhibited contrary to orders, because the Stampers have failed to show that they ordered Fox not to exhibit Playboy if the horse were sore.

## BACKGROUND

Tennessee Walking Horses have a high-stepping gait or "walk," achieved through selective breeding and training with equipment called "action devices." Unfortunately, the "walk" also can be created artificially in less talented horses by making the horse's forelimbs sore. The resulting pain causes the horse quickly to lift his feet when he walks, producing the desired gait. The sores can be produced by use of nails, tacks, injections, blistering agents or misuse of action devices. These practices are cruel to the animal and threaten the Walking Horse industry and the breed itself, because winning horses are highly valued as studs.

To end this cruelty and to protect the breed's natural ability to "walk" in its distinctive fashion, Congress enacted the 1970 Horse Protection Act, which imposes penalties for showing or exhibiting sore horses. See H.R.Rep. No. 91–1597, 91st Cong., 2d Sess. (1970), reprinted in 1970 U.S.Code Cong. & Admin.News 4870, 4871–72. In 1976, continuing reports of horse-soring prompted Congress to amend the Act to expand the Department's enforcement authority. See H.R.Rep. No. 94–1174, 94th Cong., 2d Sess. (1974) at 4–5, 6, reprinted in 1976 U.S.Code Cong. & Admin.News 1696, 1699, 1701. Most relevant here, Congress revised the definition of "sore" to eliminate requirements that the soring be done with the intent to affect the horse's gait, H.R. Rep. No. 94–1174 at 2, reprinted in 1976 U.S.Code Cong. & Admin.News 1696, and it added a statutory presumption that a horse

is sore if it manifests abnormal sensitivity or inflammation in both of its forelimbs or hindlimbs. *Id.* *See* 15 U.S.C. §§ 1821(3), 1825(d)(5) (1976).

## FACTS

On September 22, 1979, Playboy was shown at a Tennessee Walking Horse show (the show) in Sacramento, California. Twenty to thirty minutes prior to his exhibition, Playboy was examined and passed by William Hartmann (Hartmann), a non-veterinarian Designated Qualified Person (DQP) assigned to inspect horses for violations of the Act. After the examination, trainer Fox warmed up Playboy for a disputed time period of from ten to thirty minutes.[1]

After the show, Departmental inspectors selected Playboy for a second examination because he appeared in distress. Playboy was examined by Dr. Fenno, a Departmental veterinarian, who observed extensive loss of hair, callus formation, and raw abrasions in the pastern area of both of Playboy's forelimbs. Dr. Fenno palpated both front pasterns, using a dabbing motion with about as much pressure as used to feel a person's pulse, and found both forelimbs abnormally sensitive. Dr. Fenno concluded that Playboy was sore, in violation of the Act.

Subsequently, Dr. Derlicke, a Departmental trainee, examined Playboy in the same manner, and obtained the same reaction. Dr. Gay, the veterinarian in charge, next examined Playboy and noted seepage of blood-tinged serum from the posterior and anterior aspects of the pasterns, and a bilateral condition that suggested misuse of action devices. Dr. Fenno then reexamined Playboy with essentially the same results as earlier, except that he found greater sensitivity in the pasterns, and more oozing serum.

John Gunn, Playboy's co-trainer, next examined the horse. According to Fox's testimony, Playboy showed no reaction to Gunn's examination. Gunn himself did not testify at the hearing.

The final examination was by Hartmann, the DQP. In response to Hartmann's palpation of the first pastern, Playboy violently jerked back, hitting the stall wall. Hartmann also observed the abrasions, and concluded that the injuries were caused by overuse of action devices.

A hearing was held on June 2–3, 1981. The Department's ALJ concluded in her initial opinion that Playboy's abrasions and reactions were caused by factors not prohibited by the Act. Nevertheless, she found the respondents in violation on the theory that the statutory presumption of soreness[2] was irrebuttable. The ALJ fined each respondent $100. The Department's Judicial Officer, however, subsequently remanded, on grounds that the statutory presumption was rebuttable. On remand, the ALJ held that the statutory presumption of soreness was rebutted, and that Playboy was not "sore" within the meaning of the Act. The ALJ held Playboy's reactions may have been caused by the number and manner of examinations by Departmental inspectors, sand and grit from the arena rubbing on the pasterns, Playboy's striking himself, the presence of a tail brace, or stretching of the leather bands holding the action devices in place.

The Judicial Officer reversed. He held Playboy's injuries stemmed from the use of action devices at the show, coupled with a preexisting callus buildup on the pasterns. The Judicial Officer further held that the owner and exhibitor are "absolute guarantors" of the horse's condition, so that even if other factors exacerbated the injuries, the respondents should have considered those factors before using action devices.

---

1. Mr. Stamper was present when Fox and a co-trainer put action devices on Playboy prior to Hartmann's examination. He accompanied Fox and Playboy to the pre-show examination and remained in the warmup area while Fox exercised Playboy. On at least one occasion during the warmup, Fox brought Playboy to a stop beside Mr. Stamper.

2. 15 U.S.C. § 1825(d)(5) provides:
   (5) In any civil or criminal action to enforce this chapter . . . a horse shall be presumed to be a horse which is sore if it manifests abnormal sensitivity or inflammation in both of its forelimbs or both of its hindlimbs.

Finally, the Judicial Officer held that the owner need not know of the sores to be held liable under the Act. He imposed fines of $2,000 on the Stampers and $750 on Fox, and suspended all three from showing horses for one year.

Fox and the Stampers contend the Judicial Officer's inferences are unsupported by substantial evidence on the record, his holdings with regard to intent or knowledge are erroneous as a matter of law, and the Judicial Officer abused his discretion by imposing a greater penalty than the ALJ originally imposed.

## I. *Standard of Review*

▮ The statute provides that decisions of the Secretary shall be set aside if unsupported by "substantial evidence." 15 U.S.C. § 1825(b)(2) (1976). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), *quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *City of Oakland v. Donovan,* 703 F.2d 1104, 1106 (9th Cir.1983). Where an administrative agency disagrees with the conclusions of its ALJ, the standard does not change; the ALJ's findings are simply part of the record to be weighed against other evidence supporting the agency. *Saavedra v. Donovan,* 700 F.2d 496, 498 (9th Cir.1983); *NLRB v. Brooks Cameras, Inc.,* 691 F.2d 912, 915 (9th Cir.1982). The weight we accord the ALJ's findings, however, is greatest where credibility based on witness demeanor is at issue. *Brooks Cameras,* 691 F.2d at 915; *Penasquitos Village, Inc. v. NLRB,* 565 F.2d 1074, 1078–79 (9th Cir.1977). As to derivative inferences, our deference is to the agency, not to the ALJ. *Brooks Cameras,* 691 F.2d at 915; *Penasquitos Village,* 565 F.2d at 1079.

## II. *The Finding of Soreness*

▮ The only important testimonial conflict involved the time and manner of Playboy's warmup by Fox. Fox testified he rode the horse from five to ten minutes prior to the show. Dr. Gay testified that he observed the horse being ridden thirty minutes before the show, although the horse was not ridden all the times he saw it. The ALJ credited Fox's version.

Stamper's counsel later asked Dr. Fenno whether, based on a hypothetical warmup similar to that described by Fox, Playboy would have been sore within the meaning of the Act when he entered the ring. Dr. Fenno stated he doubted it, unless other factors intervened such as the horse's kicking himself. Similarly, Hártmann testified that, based on a warmup as described by Fox, it was highly unlikely that Playboy was unsound when he entered the arena, but that sand or grit from the arena might have increased the friction from the action devices Playboy wore, or that some unknown factor could have caused the injuries. Based on these hypothetical answers, and Fox's version of the warmup credited by the ALJ, the Stampers and Fox argue that no evidence shows Playboy was sore when he entered the ring, or that his injuries were caused by use of the action devices.

The Stampers and Fox admitted in their Trial Brief that Playboy exhibited pain in both forelimbs when examined by the veterinarians, thereby raising the statutory presumption of soreness. 15 U.S.C. § 1825(d)(5) (1976). The presumption was reinforced by the veterinarians' examination results and the supporting photographs. Nor did the Stampers or Fox offer evidence rebutting Playboy's abnormal sensitivity.

We find substantial evidence on the record supports the Judicial Officer's conclusions that Playboy was sore within the meaning of the Act, and that the examinations by the veterinarians played no significant part in Playboy's reactions.[3] In so

---

3. The Stampers and Fox object to the Judicial Officer's supposed consideration of evidence not on the record, regarding sound horses' ability to undergo palpation without pain, the absence of any other case alleging the examiners caused the injuries, and the possibility of masking sores in pre-show examinations by use of

holding, we find it unnecessary to resolve the credibility issue of how long Fox exercised Playboy prior to the show. The testimony of the Department's inspectors established that Playboy exhibited abnormal sensitivity in both forelimbs and visible abrasions oozing serum. This was sufficient to raise the statutory presumption of soreness. 15 U.S.C. § 1825(d)(5) (1976). Even if we accept Fox's version of the pre-show warmup, his testimony does not rebut the inspectors' findings.

Relying on the veterinarians' testimony, and the fact that no other horse was affected by arena conditions, the Judicial Officer concluded sand or grit from the arena was not a major cause of Playboy's injuries. Nor could the type of abrasions Playboy exhibited have been caused by the horse's striking himself, according to testimony by Dr. Fenno and Mr. Hartmann. Dr. Fenno also testified that he examined Playboy's chains and found them properly placed, negating this as a possible cause. Finally, the Judicial Officer rejected the tail brace as a possible cause, relying on Hartmann's direct denial of such a possibility. We find substantial evidence supports each of these conclusions.

Drs. Gay and Fenno and Mr. Hartmann testified that excessive use of action devices prior to the show had caused an extensive buildup of callus on both of Playboy's front pasterns, more severe than on other horses of similar age. All three further testified that Playboy was sore because of excessive use of action devices. From this, the Judicial Officer inferred that the use of action devices on the preexisting callus buildup caused Playboy's injuries.[4]

No other explanation of the injuries seems consistent with the veterinarians' observations. Fox and Stamper testified that one examining doctor improperly used excessive pressure in palpating Playboy. The only additional contrary testimony was hypothetical, based on Fox's description of the warmup. The Judicial Officer properly accorded these contentions and hypothetical answers lesser weight than the inspectors' testimony, which was based on direct examination of Playboy by three veterinarians and a DQP. We find substantial evidence supports the Judicial Officer's conclusions.[5]

### III. *Intent*

The Judicial Officer found that neither the Stampers nor Fox intended to sore Playboy. The Department, however, consistently has interpreted the Act as making owners and exhibitors "absolute guarantors" of the horse's condition, without regard to their knowledge or intent. *See In re Thornton,* 41 Agric.Dec. 870, 887–88 (1982), *affirmed,* 715 F.2d 1508 (11th Cir. 1983); *In re Rowland,* 40 Agric.Dec. 1934, 1943 (1981), *affirmed sub nom. Fleming v. United States Department of Agriculture,* 713 F.2d 179 (6th Cir.1983). *See also,* 9 C.F.R. § 11.2(a) (1983) (prohibiting use of any chain or other device if it causes a horse to be sored). The Department contends that an exhibitor must not use devices that injure the horse, regardless of whether

short-term anesthetics. The Judicial Officer denied that any of these facts were considered as evidence for findings here, they merely served as one of the reasons for drawing his inferences. In any event, there is substantial evidence to support the inferences apart from the disputed facts.

**4.** The Stampers and Fox characterize this inference as an "expert opinion" by the Judicial Officer, and they contend he was not qualified to render an expert opinion as to the cause of the injuries. The Judicial Officer's opinion, however, makes clear that this finding is an inference of fact from the testimony of the veterinarians and other evidence on the record.

**5.** The Stampers and Fox argue that their use of action devices on Playboy was legal, and there-

fore cannot be a basis for liability under the Act. In accordance with section 1828 of the Act, the Secretary has issued regulations for use of action devices at horse shows. 9 C.F.R. § 11.2(b) (1983). The devices used on Playboy were of types permitted by those regulations. Nevertheless, the regulations also prohibit the use of even those otherwise legal devices if they cause a horse to be sore. 9 C.F.R. § 11.2(a) (1983). We find this prohibition to be in accord with 15 U.S.C. § 1821(3)(D), which defines "sore" as physical pain, distress, inflammation or lameness caused by "any other substance or device." The respondents' argument that Playboy's action devices were legal despite their soring of Playboy is without merit.

the exhibitor intended the injury. If the horse, like Playboy, is unusually sensitive because of its extensive calluses, the owner or exhibitor must take this into account when deciding whether to use action devices at a show.

The construction of this Act is a matter of first impression before the Ninth Circuit. Two other circuits construe the Act as not requiring intent. *Thornton v. United States Department of Agriculture,* 715 F.2d 1508, at 1512 (11th Cir.1983); *Fleming v. United States Department of Agriculture,* 713 F.2d 179, 186 n. 10 (6th Cir.1983). In addition, the Eighth Circuit apparently does not require intent, although it does require knowledge under some circumstances. *See Burton v. United States Department of Agriculture,* 683 F.2d 280, 283 (8th Cir.1982).

In 1976, Congress amended the Horse Protection Act in order to facilitate enforcement. One change was the deletion of the requirement that the sore be inflicted "for the purpose of affecting [the horse's] gait." [6] The House Report stated that the new statutory language was intended to eliminate any requirement that the horse be sored with the intent to affect the horse's gait. *See* H.R.Rep. No. 94–1174, 94th Cong., 2d Sess. at 2 (1976), *reprinted in* 1976 U.S.Code Cong. & Admin.News 1696. Consistent with the congressional purpose, section 1824 prohibits the showing of a sore horse or allowing a sore horse to be shown; it contains no express element of intent. 15 U.S.C. § 1824(2) (1976). Further, the 1976 substitution of "sore" for "sored" implies that the offense focuses on the condition of the horse, not on the actions of the owner or exhibitor.

■ We accord great deference to the construction of a statute by the agency charged with its administration. *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980); *Horizon Mutual Savings Bank v. Federal Savings & Loan Ins. Corp.,* 674 F.2d 1312, 1316 (9th Cir.1982). Here, the Department's regulations and interpretations are in line with the thrust of the 1976 amendments. We therefore hold that a person need not intend to sore a horse in order to violate the Act.

*IV. Knowledge*

■ Section 1824 prohibits:

(2) The (A) showing·or exhibiting, in any horse show or horse exhibition, of any horse which is sore ... and (D) *allowing* any activity described in clause (A) ... respecting a horse which is sore by the owner of such horse.

15 U.S.C. §§ 1824(2)(A) and (D) (1976) (emphasis added). The Stampers, Playboy's owners, argue that they can "allow" a sore horse to be shown only if they know the horse is sore.

The Eighth Circuit recently set forth a three-part test for determination of this requirement. That court held that an owner does not "allow" a sore horse to be shown where (1) the owner had no knowledge the horse was sore, (2) a DQP had examined and approved the horse before the show, and (3) the owner had directed the trainer not to show a sore horse. *Burton v. United States Department of Agriculture,* 683 F.2d 280, 283 (8th Cir.1982).

The Department argues that *Burton* focuses on erroneous factors: Knowledge is difficult to prove or infer, and *all* horses shown while sore have passed a pre-show examination by a DQP. Further, the De-

---

**6.** 15 U.S.C. § 1821 currently provides in relevant part:

(3) The term "sore" when used to describe a horse means that—. . .

(D) *any other substance or device has been used by a person* on any limb of a horse or a person has engaged in a practice involving a horse, *and, as a result* of such ... use or practice, *such horse suffers ... physical pain* or distress, inflammation, or lameness when walking, trotting, or otherwise moving ...

(emphasis added). In 1976, the current definition of "sore" replaced an earlier statutory definition of "sored." The older statute provided:

(a) A horse shall be considered sored if, *for the purpose of affecting its gait —*

. . . . .

(4) any other cruel or inhumane device has been used ...

Pub.L. No. 91–540, § 2(a), 84 Stat. 1404 (1970), *reprinted in* 1970 U.S.Code Cong. & Admin. News 1638 (emphasis added).

partment contends, trainers will not testify against the owners of horses, because such testimony would not negate the trainers' own violations of the Act and would limit the trainers' future employment.

The Department consistently has held knowledge of the sores is not required for owner liability. *See, e.g., In re Crowder,* 40 Agric.Dec. 33, 41 (1981); *In re Purvis,* 38 Agric.Dec. 1271, 1278–79 (1979) (1974 violation); *In re Whaley,* 35 Agric.Dec. 1519, 1526 n. 16, 1527 (1976) (1972 violation). Also of significance, Congress left out an express knowledge requirement in 15 U.S.C. § 1825(b)(1), but expressly included the requirement in other portions of the Act. *See, e.g.,* 15 U.S.C. §§ 1824(1), (5), (6), 1825(a)(1), (a)(2)(A), (a)(2)(B), and (c) (1976). The legislative history of the Act, however, does not clarify whether the omission of a knowledge requirement from section 1825(b)(1) was intentional. *See generally* H.R.Rep. No. 91–1597, 91st Cong., 2d Sess. (1970), *reprinted in* 1970 U.S.Code Cong. & Admin.News 4870; H.R.Rep. No. 94–1174, 94th Cong., 2d Sess. (1976), *reprinted in* 1976 U.S.Code Cong. & Admin.News 1696.

We find it unnecessary in this case to resolve whether *Burton* correctly construed the Act, because the Stampers have failed to satisfy the third factor of the *Burton* test. We have not found, and the parties have not cited, any testimony indicating that the Stampers expressly ordered Fox not to show Playboy if he were sore.[7] At most, the testimony indicates that the Stampers did not affirmatively order Fox to show Playboy with knowledge that he was sore. We agree with the Eleventh Circuit that this factual difference from *Burton* is legally significant. *See Thornton,* at 1512 n. 5. There is no question that the Stampers permitted Playboy to be shown. Under these circumstances, the absence of the Stampers' knowledge of the horse's soreness is insufficient to negate the Stampers' civil liability under the Act.

Even under the *Burton* test the Stampers may be held liable. We need not decide whether a more stringent test is applicable.

## V. *Severity of the Penalty*

The Department imposed a fine of $2,000 on the Stampers and $750 on Fox, and suspended all three from Tennessee Walking Horse competitions for one year. The Stampers and Fox argue that the fines and suspensions constitute an abuse of the Judicial Officer's discretion. They urge reinstatement of the $100 fines originally imposed by the ALJ.

The scope of our review in this area is limited. "Only if the remedy chosen is unwarranted in law or is without justification in fact should a court attempt to intervene in the matter." *Nees v. Securities & Exchange Commission,* 414 F.2d 211, 217 (9th Cir.1969), *quoting American Power & Light Co. v. Securities & Exchange Commission,* 329 U.S. 90, 112–13, 67 S.Ct. 133, 146, 91 L.Ed. 103 (1946).

The sanctions imposed here are within the range authorized by the statute. 15 U.S.C. §§ 1825(b)(1) and (c) (1976). The suspensions are for the minimum time period authorized, and the fines are less than the maximum possible.

Fox and the Stampers point out they had neither intent to injure nor knowledge of Playboy's injuries. The Department, however, argues it uniformly imposes severe penalties, especially suspensions, in order to offset the great profits owners of sore horses may make. A suspension prohibits the showing or exhibiting of horses, but not owning or training them. The Judicial Officer, as required by the Act, considered the severity of Playboy's injuries, and the ability of each respondent to pay, in assessing the penalties. *See* 15 U.S.C. § 1825(b)(1) (1976). We find the penalties he imposed were not an abuse of discretion.

---

7. The ALJ, generally citing Fox's testimony, found only that the Stampers had not instructed Fox to show a sore horse. Fox's testimony, however, does not reveal what instructions, if any, he received from the Stampers. On appeal, the Judicial Officer, citing no testimony, held that the Stampers had instructed their trainers not to sore their horses or show a sore horse. We find no support in the record for the Judicial Officer's conclusion. Neither Mr. Stamper nor Fox testified that the Stampers gave their trainers such instructions.

## CONCLUSION

The findings and penalties of the Department's Judicial Officer are affirmed.

AFFIRMED.