United States Court of Appeals,

Eleventh Circuit.

No. 94-7044.

Johnny E. LEWIS and Jerry M. Morrison, Petitioners,

v.

SECRETARY OF AGRICULTURE, United States Department of Agriculture, Respondents.

Jan. 22, 1996.

Petition for Review of an Order of the Secretary, United States Department of Agriculture.

Before HATCHETT and BIRCH, Circuit Judges, and GODBOLD, Senior Circuit Judge.

GODBOLD, Senior Circuit Judge:

Jerry M. Morrison, a horse owner, and Johnny E. Lewis, a horse trainer, seek review of a final order of the Secretary of Agriculture entered in an administrative proceeding under the Horse Protection Act, 15 U.S.C. §§ 1821-1831. A Judicial Officer (JO), acting for the Secretary of Agriculture, determined that the horse "Senator's Mr. Big" was sore when entered in the Northport (Alabama) Horse Show, that trainer Lewis violated the Act by entering the sore horse and that owner Morrison violated the Act by allowing the entry of a sore horse. Each was given the maximum civil penalties allowed under 15 U.S.C. § 1825(b)(1) and (d), a $2,000 penalty and disqualification from showing or exhibiting a horse for a year.

We affirm the decision of the Secretary that the horse was sore and the decision that trainer Lewis violated the Act by entering the sore horse. We reverse the decision that owner Morrison violated the Act by allowing the entry of a sore horse and

remand for further proceedings.

"Senator's Mr. Big" is a Tennessee Walking Horse.  Such horses are prized for their unique gait.  Striving for this high-stepping gait, some horse owners participate in the inhumane practice of soring, which involves applying mechanical devices or chemical substances to the forelimbs of the horse.  15 U.S.C. § 1821(3) (1982).[1]  Soring causes pain to the horse when it attempts to place a forefoot on the ground, and the forelimb is then thrust forward.  This artificially produces the unique gait naturally produced through years of training and championship bloodlines.

Congress reacted to the soring practice by enacting the Horse

_____

[1]A horse is sore under the Act if:

> (A) an irritating or blistering agent has been applied, internally or externally, by a person to any limb of a horse,

> (B) any burn, cut, or laceration has been inflicted by a person on any limb of a horse,

> (C) any tack, nail, screw, or chemical agent has been injected by a person into or used by a person on any limb of a horse,

> (D) any other substance or device has been used by a person on any limb of a horse or a person has engaged in a practice involving a horse,

> and, as a result of such application, infliction, injection, use or practice, such horse suffers, or can reasonably be expected to suffer, physical pain or distress, inflammation, or lameness when walking, trotting, or otherwise moving, except that such term does not include such an application, infliction, injection, use or practice in connection with the therapeutic treatment of a horse by or under the supervision of a person licensed to practice veterinary medicine in the State in which such treatment was given.

15 U.S.C. § 1821(3) (1982).

Protection Act.  The Act prohibits:

> (2) The (A) showing or exhibiting, in any horse show or horse exhibition, of any horse which is sore, (B) entering for the purpose of showing or exhibiting in any horse show or horse exhibition, any horse which is sore, (C) selling, auctioning, or offering for sale, in any horse sale or auction, any horse which is sore, and (D) allowing any activity described in clause (A), (B), or (C) respecting a horse which is sore by the owner of such horse.

15 U.S.C. § 1824(2).

Lewis entered "Senator's Mr. Big" in the Northport Show. Ashley, owner Morrison's daughter, planned to show the horse in three separate events.  In the first event Rickey Statham, a Designated Qualified Person ("DQP"), examined the horse.  A DQP is a person employed by the horse show management to examine horses and to determine if the horses are sore.  The appointment of DQPs protects the show's management from liability under 15 U.S.C. § 1824(3).  The horse was passed and participated in the first event. Before the second event Statham again examined the horse, and it again passed.  Department of Agriculture (USDA) veterinarians observed these examinations.

However, before the horse participated in the second event the show sponsors announced that the horse, and Ashley as rider, were disqualified because of Ashley's young age.  Morrison prepared to leave the show with the horse, but after he had loaded the horse on the trailer the sponsors decided that Ashley was eligible for the event.  The horse was quickly removed from the trailer and again examined by Statham.  This time he wrote up a ticket noting that the horse was disqualified from showing because it was "sensitive in both front feet."  Two USDA veterinarians, Dr. Hugh Hendricks and Dr. Lowell Wood, then examined the horse by performing a

digital palpation test on the pastern areas. Both doctors determined that the horse was sore. The two departmental veterinarians completed a form, recording their findings.

About an hour after the horse was written up by Statham it was examined by Dr. James W. St. John, Jr., the horse's regular veterinarian, who found that the horse was not sore. Later that evening Dr. Hendricks wrote an affidavit describing his examinations and findings, and Dr. Wood completed a similar affidavit a day or two later. Dr. St. John also gave an affidavit.

The Morrison family participates in horse shows as a hobby, not as a business undertaking. Morrison contends that he instructed trainer Lewis that if the horse exhibited sensitivity or soreness he was not to show the horse and that the horse should not be sored. Lewis acknowledges that he received such instructions.

A complaint was issued charging trainer Lewis with a violation of § 1824(2)(B) and charging owner Morrison with a violation of § 1824(2)(D). A hearing was held before an ALJ who found that Lewis violated the Act by entering in the show a horse that was sore and that Morrison violated the Act by allowing the entry of a sore horse. Both appealed and a JO, acting for the Secretary, affirmed. With minor variations he adopted the ALJ's decision. He found that the horse was sore and, additionally, relied on the statutory presumption of § 1825(D)(5) that a horse is presumed to be sore if it manifests abnormal sensitivity or inflammation in both of its forelimbs.

## I. Sufficiency of the evidence

Our standard of review under the Act is a narrow

one—determining whether the JO employed the proper legal standards and whether substantial evidence supports the decision. *Fleming v. U.S. Dept. of Agric.,* 713 F.2d 179, 188 (6th Cir.1983). "Substantial evidence is more than a scintilla but less than a preponderance." *Elliott v. Administrator, Animal & Plant Health Inspection Serv.,* 990 F.2d 140, 144 (4th Cir.1993), *cert. denied,* --- U.S. ----, 114 S.Ct. 191, 126 L.Ed.2d 149 (1993). We hold that sufficient evidence supports the Department's conclusion that the horse was sore. Also, as an alternative ground, the JO relied upon the rebuttable presumption of soring set out in § 1825(d)(5). The two USDA veterinarians were highly experienced, they used accepted testing procedures, and they conducted thorough examinations. The DQP determined that the horse was not sore on two examinations, but we cannot say that the Secretary erred in concluding that veterinarians are better qualified to make the determination of soreness.

Dr. St. John is a federally qualified veterinarian who specializes in equine practice and examines horses using the same palpation tests used by the departmental veterinarians. His testimony differs from theirs—he thought the horse was merely nervous, and he was troubled by its having passed two DQP exams. But we cannot say that the Secretary erred in giving less weight to his testimony on the ground that he was not impartial, that he lacked experience with the requirements of the Act, that he misunderstood the requirements for soreness, that an affidavit he had given was inconsistent with his testimony, and that his observations of mere nervousness by the horse were disputed by

other observers.  Also his examination was made some 40 to 50 minutes after the USDA veterinarians completed their examinations, and it was done in the horse trailer where lighting conditions were less than desirable.

## II. Violation by the trainer

The fact of the entry of the horse by trainer Lewis and owner Morrison is admitted.  The evidence of soring was sufficient. Lewis urges, however, that he had no knowledge that the horse was sore.  But there is no knowledge requirement.  *Thornton v. U.S. Dept. of Agric.,* 715 F.2d 1508, 1511 (11th Cir.1983).  Congress amended the Act in 1976 with that intention.  We must, therefore, affirm the finding of a violation by the trainer.

## III. Violation by the owner

Proof of four elements is necessary to establish a violation of § 1824(2)(D) by an owner:

(1) the person charged is the owner of the horse in question;

(2) the horse was shown, exhibited, or entered in a horse show or exhibition;

(3) the horse was sore at the time it was shown, exhibited, or entered;  and

(4) *the owner allowed such showing, exhibition, or entry.*

*Baird v. U.S. Dept. of Agric.,* 39 F.3d 131, 135 (6th Cir.1994). The Secretary agrees that these four elements must be proved.

Our decision with respect to the owner turns on the meaning of the fourth element and the word "allow."  In *Thornton* we held that an owner could "allow" the entry of a sore horse into competition even if the owner had no knowledge that the horse was sore.  But determination that knowledge is irrelevant solves only half the

problem.  Still left is a question of first impression in this circuit:  Accepting that the owner need not have knowledge, what standard of liability does the fourth element impose on him?  The Secretary's position is straightforward and unequivocal:  entry (by the owner or by one acting for him) plus ownership and soreness are the only required elements for a violation.  "Allowing" is made an ineluctable consequence of entry plus soring—if the horse is sore and is entered the owner has "allowed" under factor four, and, all factors being met, there is a violation.  Stating it another way, "allowing" by an owner is subsumed in factors two and three.

The Eighth Circuit has described the Secretary's position as "strict liability."  *Burton v. U.S. Dept. of Agric.,* 683 F.2d 280, 282 (8th Cir.1982).  The Sixth Circuit describes the Department's interpretation as effectively rewriting the statute, making a nullity of the requirement that the owner "allow" the horse to be entered, shown, or exhibited while sore.  *Baird v. U.S. Dept. of Agric.,* 39 F.3d 131, 136 n. 10 (6th Cir.1994).  That court describes the statute as not establishing strict liability, *id.* at 136 n. 9, but the government as arguing for "something akin to strict liability."  *Id.* at 135.

The Eighth Circuit, in *Burton,* focused on the definition of "allow."  The court explained that an owner could escape liability under § 1824(2)(D) if the following three factors are shown:

(1) there is a finding that the owner had no knowledge that the horse was in a "sore" condition,

(2) there is a finding that a Designated Qualified Person examined and approved the horse before entering the ring, and

(3) there was uncontradicted testimony that the owner had directed the trainer not to show a "sore" horse.

*Burton,* 683 F.2d at 283. Under *Burton* the presence of these three factors, taken together, excuses liability. The Department declines to follow *Burton* except in cases in which an appeal would lie to the Eighth Circuit.

In *Baird* the Sixth Circuit attempted to give meaning to the "somewhat protean character" of the word "allow." It indicated that an owner may "allow" by condoning or authorizing the conduct in question or failing to prevent it by "looking the other way" or "burying one's head in the sand," and one who does not "know" may "allow" by cultivating a training atmosphere conducive to soring or doing nothing to dissuade it. *Baird,* 39 F.3d at 137.

The *Baird* court then formulated a burden-shifting test. It held that the government must, as an initial matter, make out a prima facie case of a § 1824(2)(D) violation by establishing ownership, entry, and soreness. Once the government establishes a prima facie case the owner may offer evidence that he took an affirmative step in an effort to prevent the soring that occurred. If the owner presents such evidence and the evidence is "justifiably credited," it is then up to the government to prove that the effort of the owner concerning soring of horses was merely a pretext or a self-serving ruse designed to mask what is in actuality conduct violative of § 1824. But we can find no support in the Act for a burden-shifting test. Rather it seems to us that analysis of the Act does not focus on an allocation of evidentiary burdens but instead on definition of the term "allow."

The Department urges this court to adopt the reasoning of the D.C. Circuit in *Crawford v. U.S. Dept. of Agric.,* 50 F.3d 46

(D.C.Cir.1995), *cert. denied,* --- U.S. ----, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995). That court held that "allow" has a passive meaning, i.e., "to permit by neglecting to restrain or prevent." And, if an owner allows his sore horse to enter a competition, the Secretary may assume that the owner has not prevented the trainer from soring the horse. According to *Crawford,* the owner may rebut the assumption and escape liability if a stranger was responsible for the soring or if the trainer was responsible and was discharged. Thus the consequence of ownership plus entry plus soreness is made ineluctable but for a small escape hatch—a stranger did it or the trainer was fired. Recognition by the Department of the first prong—"the owner didn't "allow' what a stranger did"—is in itself a recognition that ineluctable consequences simply does not fit as a standard. The second prong is a throwaway rationale that may make one feel that the Secretary's position is not entirely arbitrary. But, though an owner's post-event punishment of an erring trainer may be prophylactic, it has no relation to whether the owner allowed the event. We do not follow *Crawford.*

With a slight caveat we find the *Burton* test persuasive. The test fits neatly into traditional judicial analysis. It carries out the purposes of the Act while providing some protection for horse owners who are cooperating in seeking compliance. The first part of the *Burton* test does not conflict with this court's holding in *Thornton.* That part requires a finding that the owner had no knowledge of the soring. *Thornton* held that an owner violated § 1824 by allowing the entry of a sore horse into a show even if the

owner did not know the horse was sore. The *Burton* test only protects an owner who does not know the horse was sore if a DQP examined the horse and if the owner had directed the trainer not to sore. Though an owner lacks knowledge, he may still be liable if he fails to meet the two other factors.

The second element of the *Burton* test emphasizes the importance of DQPs. Congress expressly recognized this importance in 15 U.S.C. § 1823(c):

> The Secretary shall prescribe by regulation requirements for the appointment by the management of any horse show, horse exhibition, or horse sale or auction of persons qualified [i.e., DQPs] to detect and diagnose a horse which is sore or to otherwise inspect horses for the purposes of enforcing this chapter.

A horse show may be liable for not providing DQPs at horse shows. 15 U.S.C. § 1824(4).

Here, the owner fulfilled this second factor. The horse passed two DQP examinations but failed the third, and the third led to further examination and the filing of the charge. The JO considered these examinations irrelevant except the third. A DQP examination may be too remote to be accepted as probative, but it seems to us that all DQP examinations at the same show on the same day are relevant. The JO relied upon cases in which the owner attempted to show that the horse was not sore on the day in question because it had competed in other shows at other times and had not been found sore. *See In re: A.P. Holt,* 52 Agric.Dec. 233 (1993) ("[T]he fact that "Flashing Gold' had competed in other shows and had not been found sore is essentially irrelevant to the question of whether he was sore at the Celebration show."), *aff'd per curiam,* No. 93-3369 (6th Cir.1994) (unpublished); *In re:*

*Larry Edwards,* 49 Agric.Dec. 188, 197 (1990) ("The fact that the Respondents had shown horses many times before with only a few being written up is also not relevant to whether the horses in this case were sore on the nights in question."), *aff'd per curiam,* 943 F.2d 1318 (11th Cir.1991) (unpublished), *cert. denied,* 503 U.S. 937, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992); *In re Richard L. Thornton,* 41 Agric.Dec. 870 (1982) ("Since any horse owner or trainer could have a motive to sore a horse for a particular show, or could accidentally sore the horse a little more than planned on a particular occasion, I do not attach any weight to the fact that a horse was not written up as sore in examinations by USDA personnel at shows other than the one at issue in a particular case.").

The caveat we put on *Burton* relates to the third factor. Compliance with it (along with the other two factors), frees the owner of the ineluctable consequences of entry plus the fact of soreness and it frees him of being found to "allow" in the passive sense described in *Baird* by "hiding his head" or doing nothing. But compliance with the third element must be meaningful rather than purely formal or ritualistic. The owner may give firm and certain and suitably repeated directions not to sore and not to show a horse that is in sore condition. He may maintain a training environment that discourages soring or makes it impossible. He may carry out inspection practices that tend to reveal any efforts to sore. But, whatever the form, his efforts must be meaningful and not a mere formalistic evasion.

The record developed by the ALJ is not sufficient to evaluate

the first and third factors under the *Burton* test.  The second factor must be reconsidered with appropriate weight given to the three findings by the DQPs.[2]

AFFIRMED in part, REVERSED and REMANDED in part.

---

[2]The petitioners have listed as issues that the statutory definition of soreness is so vague that the application of it deprives the petitioner of due process.  This issue has not, however, been briefed and we do not consider it.