**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 2 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ROBERT B. McCLOY, JR.,

    Petitioner,

    v.

UNITED STATES DEPARTMENT
OF AGRICULTURE,

    Respondent.

No. 02-9543

**ON PETITION FOR REVIEW OF AN ORDER OF THE SECRETARY,**
**UNITED STATES DEPARTMENT OF AGRICULTURE**
**(D.C. No. HPA 99-0020)**

Todd O. Lafferty, Gibson, Ochsner & Adkins, L.L.P., Amarillo, Texas, for
Petitioner.

Stephen M. Reilly, (James Michael Kelly, Deputy General Counsel, and
Margaret M. Breinholt, Assistant General Counsel, on the brief), Office of the
General Counsel, U.S. Department of Agriculture, Washington, D.C., for
Respondent.

Before **KELLY**, **HENRY**, and **HARTZ**, Circuit Judges.

**HARTZ**, Circuit Judge.

Petitioner Robert B. McCloy, Jr., appeals from an order of the Secretary of Agriculture (the Secretary) finding him liable under the Horse Protection Act (HPA), 15 U.S.C. §§ 1821-31, for allowing a sore horse to be entered in a horse show. We have jurisdiction under 15 U.S.C. § 1825(b)(2), and we affirm.

## BACKGROUND

Congress enacted the HPA in 1970 to combat the "cruel and inhumane" practice of soring Tennessee Walking Horses in order to improve their performance at horse shows. 15 U.S.C. § 1822. "If the front feet of the horse were deliberately made sore, the intense pain which the animal suffered when placing his forefeet on the ground would cause him to lift them up quickly and thrust them forward, reproducing exactly the desired gait." H.R. Rep. No. 91-1597 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4870, 4871. "[S]oring is usually done by applying a blistering agent, such as oil of mustard, to the pastern area of the horse's leg and by wrapping this area with chains or metal rollers." *Id.*

The HPA prohibits:

> The (A) showing or exhibiting, in any horse show or horse exhibition, of any horse which is sore, (B) entering for the purpose of showing or exhibiting in any horse show or horse exhibition, any horse which is sore, (C) selling, auctioning, or offering for sale, in any horse sale or auction, any horse which is sore, and (D) allowing any activity described in clause (A), (B), or (C) respecting a horse which is sore by the owner of such horse.

15 U.S.C. § 1824(2). Those found in violation of the HPA are subject to civil

penalties of up to $2,200 for each violation and suspension from showing horses for a period of at least one year. *See* 15 U.S.C. § 1825(b)(1); 7 C.F.R. § 3.91(b)(2)(vii) (adjusting fine upward to $2,200 in accordance with Federal Civil Penalties Inflation Adjustment Act of 1990); 15 U.S.C. § 1825(c). Knowing violations are subject to criminal penalties. 15 U.S.C. § 1825(a). The HPA authorizes the Secretary "to issue such rules and regulations as he deems necessary to carry out the provisions of [the HPA]." 15 U.S.C. § 1828.

Dr. McCloy purchased Ebony's Threat's Ms. Professor (Missy), a Tennessee Walking Horse, in 1995 and placed her with trainer Ronal Young in 1997. According to Dr. McCloy, he instructed Young that "[t]here was no need to sore the horse," Tr. 152, and he made unannounced visits to Young's stables to insure that Missy was not sored, Tr. 170, although Dr. McCloy also admits in his affidavit that he gave Young "no verbal or written instructions concerning the training of [Missy]. Mr. Young was given complete custody in training the horse." Complainant's Exh. 4. Despite the apparently inconsistent testimony, the Judicial Officer (JO) for the United States Department of Agriculture (USDA) found that Dr. McCloy had given Young a genuine instruction not to sore Missy. Aplt. App. I at 58.

Missy was entered in the 60th Annual Tennessee Walking Horse National Celebration in Shelbyville, Tennessee, on September 4, 1998. Officials from the

horse show inspected Missy and disqualified her from participating on the ground that she was sore. Two veterinarians from the Animal and Plant Health Inspection Service (APHIS), an agency of the USDA, then examined Missy and determined that she was indeed sore. Dr. McCloy learned of the disqualification while watching the show in the stands and testified later that he was not aware that Missy would be shown.

The APHIS filed a complaint against Dr. McCloy in May of 1999. An Administrative Law Judge (ALJ) determined on August 10, 2001, that Dr. McCloy had violated the HPA by allowing entry of a sore horse and assessed a fine of $2,200. On appeal to the JO, the APHIS argued that Dr. McCloy should also be disqualified from showing horses for a period of time; and Dr. McCloy argued that the ALJ had erred in concluding that he had violated the HPA. On March 22, 2002, the JO filed a 73-page opinion affirming the finding that Dr. McCloy violated the HPA, affirming imposition of the $2,200 fine, and additionally imposing a one-year disqualification period.

The JO determined that the "evidence establishes that [Dr. McCloy] did not know that Ronal Young entered Missy . . . until he was informed . . . that Missy had been 'turned down,'" and the JO also noted that there is "no evidence that [Dr. McCloy] objected to his trainers entering Missy in horse shows or horse exhibitions, and, specifically, the record contains no evidence that [Dr. McCloy]

- 4 -

objected to Ronal Young's entering Missy in the 60th Annual Tennessee Walking Horse National Celebration." Aplt. App. I at 28-29. Adopting the USDA's position on what constitutes "allowing" a sore horse to be entered, the JO further found that Dr. McCloy was a "guarantor that Missy would not be sore when Ronal Young entered Missy in the 60th Annual Tennessee Walking Horse National Celebration . . . [and] . . . [Dr. McCloy] breached his guarantee as a horse owner that Ronal Young . . . would not enter Missy in the [show] . . . while she was sore." *Id*. at 29-30. The Secretary's position, as characterized by the JO, is that "a horse owner who allows a person to enter the owner's horse in a horse show or horse exhibition for the purpose of showing or exhibiting the horse is a guarantor that the horse will not be sore when the horse is entered in that horse show or horse exhibition." *Id*. at 28 (citing *In re Carl Edwards & Sons Stables*, 56 Agric. Dec. 529, 589-90 (1997); *In re Gary R. Edwards*, 55 Agric. Dec. 892, 979 (1996); *In re John T. Gray*, 55 Agric. Dec. 853, 888 (1996)). A subsequent motion for reconsideration was denied, and Dr. McCloy filed a timely petition for review with this court.

## DISCUSSION

Our review of the JO's decision is limited to determining "whether the proper legal standards were employed and substantial evidence supports the decision." *Gray v. USDA*, 39 F.3d 670, 675 (6th Cir. 1994) (internal quotation

marks omitted); *see also* 15 U.S.C. § 1825(b)(2) ("[F]indings of the Secretary shall be set aside if found to be unsupported by substantial evidence."). Dr. McCloy challenges both the legal standard employed by the JO and the sufficiency of the evidence to support the JO's findings. We begin with the challenge to the legal standard.

Section 1824(2) of the HPA prohibits:

> The (A) showing or exhibiting, in any horse show or horse exhibition, of any horse which is sore, (B) entering for the purpose of showing or exhibiting in any horse show or horse exhibition, any horse which is sore, (C) selling, auctioning, or offering for sale, in any horse sale or auction, any horse which is sore, and (D) allowing any activity described in clause (A), (B), or (C) respecting a horse which is sore by the owner of such horse.

Clause (D) is the clause that governs the liability of owners. It states that the owner is liable for "allowing any activity described in clause (A), (B), or (C) respecting a horse which is sore." The decisive question is *what* must the owner allow if he is to be liable. The USDA reading of the statute is that the owner need only allow the entry of the horse in a show, the sale of the horse, etc. The fact of the horse's being sore is not a component of what the owner must allow. The owner need have no knowledge of the horse's being sore, nor need the owner bear any fault with respect to the soring. If, for example, the owner allows a horse to be entered in an exhibition, then the owner is liable if it turns out that the horse was sore. We will refer to this interpretation as the "simply-allowing"

- 6 -

interpretation.

The alternative reading of the statute is that the owner must allow not just the entry of a horse, but the entry of a *sore* horse. If that is the proper reading of the statute, there remains the issue of what it means to "allow" the entry of a sore horse. One could say that the owner "allows" the entry of a sore horse only if the owner *knows* the horse is sore. Or one might say that an owner can "allow" such entry by failing to take reasonable steps to prevent the horse from being entered when sore. Or one might interpret "allow" to require some other degree of responsibility by the owner. All such interpretations, however, would require some element of owner responsibility for the soring itself. We will refer to these interpretations as "allowing-plus" interpretations. Dr. McCloy argues for an allowing-plus interpretation. He contends that USDA's contrary construction of the statute is simply wrong.

When an agency charged with the administration of a statute consistently applies a reasonable construction of the statute in the course of formal adjudication, we ordinarily defer to that construction. *See SEC v. Zandford*, 535 U.S. 813, 819 (2002) (consistent interpretation of § 10(b) by SEC in formal adjudication is entitled to deference if reasonable); *United States v. Mead Corp.*, 533 U.S. 218, 229-30 (2001); Crawford *v. USDA*, 50 F.3d 46, 50-51 (D.C. Cir. 1995) (deferring to USDA interpretation of § 1824(2)). There can be no dispute

that the USDA is charged with administering the HPA, and that it has consistently interpreted § 1824(2)(D) in the context of formal adjudication. But there is a circuit split regarding whether the USDA's construction of the HPA with respect to owner liability is reasonable. *Compare Crawford v. USDA*, 50 F.3d 46, 50-51 (D.C. Cir. 1995) (deferring to USDA interpretation of § 1824(2)) *with Baird v. USDA*, 39 F.3d 131, 137 n.10 (6th Cir. 1994) (USDA interpretation does not "fall[] within the range of permissible interpretations"). In our view, the USDA interpretation is a reasonable one. That interpretation is supported by the following analysis.

The key to deciding what the statute requires the owner to allow is the phrase "respecting a horse which is sore" in clause (D). The inclusion of this phrase supports the "simply-allowing" interpretation, because, as we now proceed to explain, the phrase would seem to serve no purpose if the statute were intended to impose an "allowing-plus" requirement for liability.

With the words "respecting a horse which is sore" deleted from clause (D), § 1824(2) would prohibit:

> The (A) showing or exhibiting, in any horse show or horse exhibition, of any horse which is sore, (B) entering for the purpose of showing or exhibiting in any horse show or horse exhibition, any horse which is sore, (C) selling, auctioning, or offering for sale, in any horse sale or auction, any horse which is sore, and (D) allowing any activity described in clause (A), (B), or (C) by the owner of such horse.

The natural reading of the subsection as so rewritten would be that clause (D)'s phrase "activity described in clause (A)" (and similarly for clauses (B) and (C)) refers to "showing or exhibiting, in any horse show or horse exhibition, *of any horse which is sore*." (emphasis added). With the words "respecting a horse which is sore" omitted, there would be no reason to construe the "activity described in clause (A)" as anything other than the activity described by all the words in clause (A). Accordingly, clause (D) would prohibit the owner from "allowing" the "showing or exhibiting, in any horse show or exhibition, of any horse which is sore." The statutory language would seem to call for an allowing-plus interpretation. To be liable, the owner would have to bear some measure of responsibility (the precise measure being unnecessary to decide for present purposes) for the soring.

This construction becomes questionable, however, once the words "respecting a horse which is sore" are reinserted in clause (D). When those words are added, what the owner is prohibited from doing is "allowing any activity described in clause (A), (B), or (C) respecting a horse which is sore." Consequently, the "activity described in clause (A)" cannot be the activity described by all the words in clause (A): "showing or exhibiting, in any horse show or horse exhibition, of any horse which is sore." If that were the "activity described in clause (A)," then clause (D), as written in the statute, would prohibit

an owner from "allowing [the showing or exhibiting, in any horse show or horse exhibition, of any horse which is sore] respecting a horse which is sore." The words "respecting a horse which is sore" would become sloppy surplusage. Under a long-standing canon of statutory interpretation, one should avoid construing a statute so as to render statutory language superfluous. *See, e.g.*, *Oxy USA, Inc. v. Babbitt*, 268 F.3d 1001, 1006 (10th Cir. 2001) (en banc). That canon is particularly apt and persuasive here, because in this short subsection the uselessness of the words "respecting a horse which is sore" could not have escaped the drafters' notice. Thus, one could reasonably conclude that in clause (D) the words "activity described in clause (A)" (and similarly for (B) and (C)) should be interpreted as "showing or exhibiting [a horse] in any horse show or horse exhibition," not "showing or exhibiting, in any horse show or horse exhibition, *of any horse which is sore*."

Proceeding, then, from this construction of the phrase "activity described in clause (A)," what clause (D) prohibits an owner from doing is "allowing [the showing or exhibiting in any horse show or horse exhibition] respecting a horse which is sore." This can reasonably be read to say that what the owner must "allow" is merely the showing or exhibiting of the horse, but that there is no violation unless the showing or exhibiting was with respect to (*i.e.*, involved) a sore horse. In other words, the statute prohibits "simply allowing." The language

might also support an allowing-plus interpretation—that what the owner is prohibited from doing is allowing the showing or exhibiting of a *sore* horse. But, as explained above, one would reach this interpretation even if the words "respecting a horse which is sore" were deleted from clause (D). Why would the drafters bother to insert the phrase "respecting a horse which is sore," if the same meaning would be conveyed (indeed, conveyed more clearly) without the phrase? Again, the USDA could properly avoid construing the statute so as to render statutory language surplusage. *See Oxy USA*, 268 F.3d at 1006.

In sum, the words "respecting a horse which is sore" in clause (D) pose a significant obstacle to an allowing-plus interpretation of the clause—an interpretation that would limit the prohibition to allowing, for example, the entry of a *sore* horse. If that were the intended meaning, it would have been easier, and cleaner, to convey the point by omitting the words "respecting a horse which is sore" from § 1824(2)(D). Reluctant to assume that the drafters were trying to be clumsy and confusing, the USDA could reasonably read the statute to say that if a sore horse is entered in a show, etc., the owner is liable simply for allowing it to be entered, regardless of whether the owner is implicated in any way (by intent, negligence, or even failure to exercise greater control) in the soring.

Moreover, the USDA's interpretation of the statute does not produce a remarkable result. In essence, it imposes on the owner a nondelegable duty not to

engage in the practice of soring. This may be a heavy burden on owners. But it may be justified as a prophylactic measure necessary to ensure that trainers have no incentive to sore their horses. *See Crawford*, 50 F.3d at 51-52. Although some circuits appear reluctant to uphold sanctions when there is uncontradicted testimony that the owner instructed the trainer not to engage in soring, *see, e.g.*, *Burton v. USDA*, 683 F.3d 280, 283 (8th Cir. 1982), one can be skeptical of self-serving testimony to that effect by the owner or trainer. Of course, when an owner can convince the USDA of his or her efforts to prevent soring, the agency may decide to impose only a light sanction or none at all. *See* 15 U.S.C. § 1825(b)(1). (Also, recall that *criminal* penalties are authorized only for *knowing* violations of § 1824. *See* 15 U.S.C. § 1825(a).)

As for Dr. McCloy's challenge to the sufficiency of the evidence, we need only find that there was sufficient evidence for the JO to be persuaded that the trainer had authority to enter Missy in the show. The JO wrote the following:

> [T]he record is clear that Respondent allowed Ronal Young to enter Missy in the 60th Annual Tennessee Walking Horse National Celebration. Respondent testified that trainers who Respondent hired, including Ronal Young, entered Missy in horse shows and horse exhibitions approximately 25 times before September 4, 1998, and Ronal Young entered Missy in at least two horse shows or horse exhibitions after September 4, 1998 (Tr. 151, 174-75). The record contains no evidence that Respondent objected to his trainers entering Missy in horse shows or horse exhibitions, and, specifically, the record contains no evidence that Respondent objected to Ronal Young's entering Missy in the 60th Annual Tennessee Walking Horse National Celebration for the purpose of showing or exhibiting

Missy in that horse show. Moreover, Respondent does not contend
that he did not allow Ronal Young to enter Missy in the 60th Annual
Tennessee Walking Horse National Celebration.

In addition, there was no evidence that Dr. McCloy ever complained to Young about having entered Missy.

In our view, the JO could reasonably infer that Young had authority to enter Missy in shows and exhibitions without obtaining specific approval for each entry.

## CONCLUSION

Holding that the JO employed the proper legal standard and that his decision is supported by substantial evidence, we AFFIRM the Secretary's decision.

No. 02-9543, <u>Robert B. McCloy v. United States Department of Agriculture</u>

**KELLY**, Circuit Judge, dissenting.


The court adopts the USDA's position that an owner is liable regardless of knowledge or fault for a sore horse. <u>See</u> <u>Crawford v. USDA</u>, 50 F.3d 46, 50-51 (D.C. Cir. 1995). In so doing, the court ignores the language of the statute and does not consider the language as a whole and rejects an interpretation that would require the USDA to prove that the owner is somehow responsible for the soring, either by authorizing, condoning, or remaining deliberately ignorant about it. <u>See</u> <u>Lewis v. Sec'y of Agric.</u>, 73 F.3d 312, 315-16 (11th Cir. 1996); <u>Baird v. USDA</u>, 39 F.3d 131, 136 (6th Cir. 1994); <u>Burton v. USDA</u>, 683 F.2d 280, 282-83 (8th Cir. 1982). According to the court, the key to this issue is contained in a phrase used in § 1824(2)(D)–"respecting a horse which is sore." The court reasons that this phrase could not mean the same thing as "any horse which is sore," which is used three times before in the statute. According to the court, the phrase "any horse which is sore" does not inform the reading of § 1824(2)(D); rather, "respecting a horse which is sore" means that entering, showing, or exhibiting a horse in a horse show results in liability if the horse turns out to be sore.

In my view, the court reads far too much into what appears to be ordinary language rather than perfection in draftsmanship. This novel approach to the statute is not that of the USDA, although surely the USDA will agree with the

result.  According to the USDA, "[w]hether [Dr.] McCloy violated the HPA turns on the meaning of the term 'allow.'"  Respondent's Br. at 15.  I agree, and note that several other circuits resolved the issue based upon the meaning of "allows." Regardless of whether "respecting a horse which is sore" is surplusage, it is clear that the statute prohibits entering, showing or exhibiting a sore horse, § 1824(2)(A)–(B), and also prohibits an owner allowing such entry, show or exhibition.  § 1824(2)(D).

The USDA contends that the act of entering a sore horse establishes liability under § 1824(2)(B), so in like manner § 1824(2)(D) should do the same for owners.  Respondent's Br. at 14-16.  The fact that the statute differentiates between those who directly enter, show, or exhibit horses and those who do not suggests just the opposite.  The USDA's interpretation reads "allows" out of the statute.  Cf. Baird, 39 F.3d at 137 n.10 (refusing to extend Chevron deference to USDA's interpretation of § 1824(2)(D) because it would render the term "allow" a nullity).  Congress chose a more nuanced approach.  The term "allow" connotes more than strict liability (or the liability of a guarantor)–according to the Oxford English Dictionary the term means "[t]o praise, commend, approve of," or "[t]o admit the realization of, permit."  Oxford English Dictionary (2d ed. 1989).

The undisputed testimony of Dr. McCloy was that he was not even aware that Missy would be shown on the day the horse was disqualified for being sore

before the show.  Dr. McCloy further offered uncontradicted testimony that he did not praise, commend, or approve of soring Missy, nor did he permit it in any meaningful sense.  Rather, Dr. McCloy made unannounced visits to check on Missy and, in the JO's own words, the USDA "did not prove that [Dr. McCloy's] admonitions directed to Ronal Young concerning the soring of Missy constituted merely a pretext or a self-serving ruse."  Id. at 38.  In light of these facts and my interpretation of § 1824(2)(D), I would hold that Dr. McCloy cannot be held liable for violating the HPA.  See Lewis, 73 F.3d at 315-17.