PHILLIPS PETROLEUM COMPANY, a corporation, Plaintiff–Appellee,

v.

Manuel LUJAN, Jr., Secretary of Interior; Kenneth M. Moyers, Chief, Royalty Compliance Division; Nick L. Kelly, Area Manager, Dallas Regional Compliance Office, Minerals Management Service; United States Department of the Interior; The Mineral Management Service, Defendants–Appellants.

Amoco Production Company; Anadarko Petroleum Corporation; Chevron U.S.A. Inc.; Exxon Company; Fina Oil and Chemical Company; Marathon Oil Company; Mobil Exploration & Producing U.S., Inc.; Pennzoil Company; Shell Oil Company; Texaco Inc., Amici Curiae.

No. 92–5136.

United States Court of Appeals, Tenth Circuit.

Sept. 2, 1993.

Charles L. Kaiser and Scott W. Hardt of Davis, Graham & Stubbs, Denver, CO, for amici curiae.

Before BRORBY, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and BROWN,* Senior District Judge.

BRORBY, Circuit Judge.

The central issue raised in this appeal is at what point should the statute of limitations commence to run in an action by the government to recover underpaid royalties from an oil and gas lease.

The significant facts were stipulated by the parties. Briefly summarized, the appellee, Phillips Petroleum Co. (Phillips) is a lessee of an oil and gas lease on certain allotted Indian lands in Oklahoma. The Department of the Interior (DOI) is responsible for administering such leases and the Minerals Management Service of the DOI collects royalty payments from lessees in return for the right to extract oil and gas from the leased properties. *See Phillips Petroleum Co. v. Lujan,* 963 F.2d 1380, 1382 (10th Cir.1992). During the months of July–September 1983, Phillips unintentionally underpaid its royalties, thereby breaching its lease. Less than six years after this breach, the government, acting on behalf of the lessor, audited Phillips' production records and discovered the error. The government advised Phillips of the error and thereafter ordered Phillips to remit the unpaid royalties amounting to $2,969.95. The government's order was issued on September 26, 1989 (hereinafter referred to as the September order).

Phillips filed suit against the government to enjoin it from enforcing the order. Phillips alleged the applicable six-year statute of limitations, 28 U.S.C. § 2415(a), barred the government from collecting the unpaid royalties. The district court granted Phillips motion for summary judgment, holding that the royalties owed for the July 1983 production month were due on August 31, 1983, and the six-year statute of limitations had expired prior to the government's September order.

T.L. Cubbage II of Brown McCarroll & Oaks Hartline, Dallas, TX (L.K. Smith and Paul E. Swain III, Boone, Smith, Davis, Hurst & Dickman, Tulsa, OK, with him, on the briefs), for plaintiff-appellee.

Robert L. Klarquist, Dept. of Justice, Vicki A. O'Meara, Acting Asst. Atty. Gen., Washington, DC, and Kathleen Bliss Adams, Asst. U.S. Atty., Tulsa, OK, Gerald S. Fish and Martin W. Matzen, Dept. of Justice, Peter J. Schaumberg and Geoffrey Heath, Dept. of the Interior, Washington, DC, for defendants-appellants.

* The Honorable Wesley E. Brown, Senior United States District Judge, District of Kansas, sitting by designation.

The court further found that when the government issued the September order, the six-year period had not yet expired for the August and September 1983 production months, and that under 28 U.S.C. § 2415(a), the September order was a final administrative order allowing the government one year from the date of such order to file a claim against Phillips. The district court held, however, that the government's August and September claims were time-barred as well because no action or counterclaim was filed within the one-year time frame.

The government raises two issues on appeal. First, it claims a cause of action for unpaid royalties under 28 U.S.C. § 2415(a) does not accrue until an audit is completed. Second, the government asserts the statute of limitations is tolled pursuant to 28 U.S.C. § 2416(c) until such time as the government timely completes an audit. As this is an appeal from a summary judgment order, our standard of review is de novo. *Phillips Petroleum*, 963 F.2d at 1384.

## ANALYSIS

### 1. *Accrual of Government's Right of Action Under 28 U.S.C. § 2415(a)*

■ The parties agree that 28 U.S.C. § 2415(a) is the applicable statute for determining when the government must commence its action to collect the royalty underpayment. Section 2415(a) states in relevant part as follows:

Subject to the provisions of section 2416 of this title ... every action for money damages brought by the United States ... or agency thereof which is founded upon any contract ... shall be barred unless the complaint is filed within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later.[1]

The government contends its right of action accrues when it completes an audit. To support its contention, the government cites several cases involving the Medicare system, including *United States v. Hughes House Nursing Home, Inc.*, 710 F.2d 891, 894 (1st Cir.1983); *United States v. Pisani*, 646 F.2d 83, 89 (3d Cir.1981); *United States v. Gravette Manor Homes, Inc.*, 642 F.2d 231, 234 (8th Cir.1981); and *United States v. Withrow*, 593 F.2d 802, 806 (7th Cir.1979). These cases stand for the general proposition that when 28 U.S.C. § 2415(a) is applied in the Medicare context, a right of action is deemed to accrue when a final determination of liability is made. We find this precedent unpersuasive, however, as we do not believe the Medicare program is analogous to the government's program concerning federal and Indian oil and gas leases.

The Medicare scheme is governed by a series of regulations premised on the fact that medical providers will be advanced funds periodically to cover their estimated costs and that adjustments must be made later when the actual cost of the services to be reimbursed are determined. *See Hughes House Nursing Home*, 710 F.2d at 893 (discussing the Medicare regulation scheme); *Gravette Manor Homes*, 642 F.2d at 233 (same). For this reason, "the government's cause of action [in the Medicare context] accrue[s] when, *under its regulations*, it [becomes] entitled to demand its money." *Hughes Nursing Home*, 710 F.2d at 894 (emphasis added). The government is not entitled to a refund during the interim when payments are made because the actual costs of the provider are still being incurred.

In contrast, the oil and gas lease involved in this litigation is located on restricted Indian allotted land and governed by 25 U.S.C. § 396 and the Federal Oil and Gas Royalty Management Act, 30 U.S.C. §§ 1701–1757 (1988) (FOGRMA). These laws do not establish a regulatory scheme similar to that found in the Medicare cases. Under the statutory

---

**1.** Both parties recognize, and we agree, that oil and gas leases are contracts. *See Reese Exploration v. Williams Natural Gas*, 983 F.2d 1514, 1518–19 (10th Cir.1993) (applying contract interpretation law to an oil and gas lease); *United States v. Essley*, 284 F.2d 518, 520 (10th Cir.

1960) (same). Thus, we likewise agree with the parties that 28 U.S.C. § 2415(a) is the controlling statute of limitations as it applies to "every action for money damages brought by the United States ... which is founded upon any *contract*." (Emphasis added.)

scheme applicable to this case, audits are not mandatory and are conducted only "to the extent practicable." 30 U.S.C. § 1711(c)(1). Moreover, unlike in the Medicare program, FOGRMA does not require estimated royalty payments followed by subsequent retroactive adjustments.

Since we find the Medicare line of cases inapplicable to federal oil and gas leases, we look to the ordinary usage of the term "accrues." Generally, "a cause of action 'accrues' when 'it comes into existence.'" *FDIC v. Belli*, 981 F.2d 838, 840 (5th Cir. 1993) (quoting *United States v. Lindsay*, 346 U.S. 568, 569, 74 S.Ct. 287, 288, 98 L.Ed. 300 (1954)). In other words, "[u]nder federal law governing statutes of limitations, a cause of action accrues when all events necessary to state a claim have occurred." *Chevron U.S.A., Inc. v. United States*, 923 F.2d 830, 834 (Fed.Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 167, 116 L.Ed.2d 131 (1991). Along similar lines, the Supreme Court, in interpreting the Portal-to-Portal Act, said "[a] cause of action is created when there is a breach of duty owed the plaintiff. It is that breach of duty, not its discovery, that normally is controlling."[2] *Unexcelled Chemical Corp. v. United States*, 345 U.S. 59, 65, 73 S.Ct. 580, 583, 97 L.Ed. 821 (1953). Applying this law to the facts of the case, we hold the government's right of action accrued on the date the contract was breached, which was the date the royalties were due and payable.[3] It is upon that date that Phillips breached a duty owed the government under the contract and the events necessary to the government's claim had occurred.

### 2. *Tolling of the Limitations Period Under 28 U.S.C. § 2416(c)*

██ The government's second claim is that under 28 U.S.C. § 2416(c), the statute of limitations was tolled until the government completed its audit. The six-year statute of limitations is expressly subject to § 2416(c) which states, in relevant part, that

> [f]or the purpose of computing the limitations periods established in section 2415, there shall be excluded all periods during which ... facts material to the right of action are not known and reasonably could not be known by an official of the United States.

Section 2416(c) essentially excludes from the six-year limitation period those periods of time when the government: (1) did not know the facts material to its right of action; and (2) reasonably could not have known of the facts material to its right of action. The parties agree the government did not know of the underpayment of the royalty until the audit was completed and thus the first statutory requirement to extend the limitation period was satisfied. The government focuses upon the second requirement by asserting it could not have known about the underpayment until it completed the audit.

██ The resolution of this issue is one of statutory interpretation. In interpreting a statute, our initial inquiry begins with the language of the statute and if that language is clear, we give effect to its meaning. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). The best evidence of Congressional intent is the text of the statute itself and where the language is unambiguous, our inquiry is complete. *West Virginia Univ. Hospitals, Inc. v. Casey*, 499 U.S. 83, 98–99, 111 S.Ct. 1138, 1147, 113 L.Ed.2d 68 (1991); *Aulston v. United States*, 915 F.2d 584, 589 (10th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 2011, 114 L.Ed.2d 98 (1991). We believe the relevant portion of 28 U.S.C. § 2416(c) is plain and unambiguous.

The language in section 2416(c) is subject to only one reasonable interpretation: the

---

**2.** The Supreme Court has also recognized the hazards inherent in attempting to define for all purposes when a "cause of action" first "accrues." Such words are to be "interpreted in the light of the general purposes of the statute and of its other provisions, and with due regard to those practical ends which are to be served by any limitation of the time within which an action must be brought."

*Crown Coat Front Co. v. United States*, 386 U.S. 503, 517, 87 S.Ct. 1177, 1185, 18 L.Ed.2d 256 (1967).

**3.** The parties stipulated that Phillips' royalty payments were due and payable on the last day of the month following the month of production.

six-year statute of limitations is tolled until such time as the government could reasonably have known about a fact material to its right of action. *See FDIC v. Wheat,* 970 F.2d 124, 128 (5th Cir.1992) ("The plain language of section 2416 leads us to conclude the limitations period could not begin until the FDIC had constructive knowledge of the cause of action"). Our interpretation raises two questions relevant to this dispute, (1) what is a material fact to the government's right of action; and (2) when should the government reasonably have known of the material fact. We address these two issues in order.

A "fact[ ] material to the right of action" necessarily includes the fact that gave rise to the right of action. *See United States v. Kass,* 740 F.2d 1493, 1498 (11th Cir.1984) (once "the facts making up the 'very essence of the right of action' " are reasonably knowable, the § 2416 bar is dropped). In the present case, the deficient royalty payment constituted a breach of Phillips' contractual duty to the government and it is that fact which gave rise to the government's right of action; therefore, the deficient payment was clearly a material fact. The statute of limitations should, therefore, have been tolled until such time as the government could reasonably have known about Phillips' breach.

■ The next issue involves the determination of when the government could reasonably have known about the violation. Phillips essentially asserts that the statute of limitations should commence at the time of breach. The flaw in this argument is that it renders the language in 28 U.S.C. § 2416(c) meaningless because it assumes that it is always reasonable for the government to know material facts about a right of action at the time the material fact occurs. We disagree with Phillips and believe § 2416(c) contemplates that some time interval should exist between the accrual of the right of action and the initial running of the six-year limitations period if the government is unaware of facts material to its right of action.

Phillips argues that "the legislative history [of § 2416(c) ] clearly establishes that fraud is the driving force behind the exclusion." [4] We respond to this assertion in two ways. First, and foremost, the plain language of § 2416(c) places no such restrictions on the scope of its application. It quite simply states the six-year limitations period is tolled if "facts material to the right of action are not known and reasonably could not be known." As we stated earlier, where the text of the statute is unambiguous, our inquiry is complete. Second, we do not find Phillips' characterization of the legislative history completely accurate. The legislative history states "the *principal* application of this exclusion will *probably* be in connection with fraud situations." S.Rep. No. 1328, 89th Cong., 2d Sess. *reprinted in* 1966 U.S.C.C.A.N. 2502, 2507 (emphasis added). Use of the words "principal" and "probably" suggests Congress did not intend for § 2416 to be only applicable to instances of fraud. In fact, the Senate report states that "[t]his provision is required because of the difficulties of Government operations due to the size and complexity of the Government." *Id.* Thus, although Congress' principal concern in implementing § 2416(c) may have been fraud, it was clearly not the only concern.[5]

Our interpretation of § 2416(c) is supported by a provision in FOGRMA which requires lessees to maintain records for six years "unless the Secretary notifies the record holder that he has initiated an audit or investigation involving such records and that such records must be maintained for a longer period." 30 U.S.C. § 1713(b). Although § 1713(b) does not define what is a reasonable time to complete an audit, it does indicate that audits may extend past the six-year statute of limitations, suggesting Congress assumed some lawsuits concerning royalty payments might be initiated more than six years after the payment was due.

Phillips further asserts that to allow the statute of limitations to be tolled, gives the

---

4. Similarly, the amicus curiae brief claims § 2416(c) only tolls the statute of limitations "where facts material to Interior's royalty claim (i) are inherently unknowable or (ii) have been fraudulently concealed by the defendant."

5. The government makes no allegation or suggestion that the royalty underpayment was anything other than an honest mistake.

government "absolutely unbridled discretion as to when it must commence audits, when it must complete audits and when it must commence actions against royalty payors for the collection of underpaid royalties." Although we fully recognize and understand Phillips' concerns,[6] the plain language of the statute should prevent realization of those fears by interjecting a reasonableness constraint on the government's discretion.

In some instances, the statute of limitations may run at the time of breach either because the government learned of the breach or should have known of the breach.[7] In the majority of royalty disputes, however, the government will need to conduct an audit to discover that a breach occurred. The time consumed before initiating and completing the audit is not within the government's discretion as feared by Phillips. The determining factor in deciding when the statute of limitations should commence to run is the date at which the government should "reasonably" have known of the breach. Thus, in order to toll the statute of limitations until such time as the government completes its audit, the district court must determine that the "facts material to the right of action [were] not known and reasonably could not be known" without the audit, and that the audit was completed within a reasonable time after the deficient royalty payment. If the district court determines the government could reasonably have completed an audit earlier than it did, and thus reasonably should have known about its right of action sooner, then the statute of limitations must commence to run at the time the audit should have been completed. The "reasonableness" requirement expressly set forth under § 2416(c) is a complex factual determination to be made by the district court.

In a situation such as the present case, where the lessee claims that the government's action accrued more than six years past, the district court should, consistent with this opinion, hold an evidentiary hearing to determine when the government knew or should have known about the deficient royal-ty payment. *See United States v. Gavilan Joint Community College Dist.,* 849 F.2d 1246 (9th Cir.1988) (the circuit court referred to how "the district court concluded that '[d]efendants supplied overwhelming evidence indicating that the Government knew or reasonably should have known of the alleged overpayments prior to the audit' ").

■ In order to provide the district court with some guidance in making its reasonableness determination, we set forth the following concerns. The district court should be wary of rubber stamping the timing of government audits. Clearly, the government should not be able to postpone litigation due to a lack of efficiency or diligence on its part. The legislative history in support of § 2415(a) indicates Congress was motivated in part by notions of fairness and equity in government dealings with private litigants, and further motivated to reduce the costs of record keeping and encourage prompt agency actions on claims. S.Rep. No. 2438, 89th Cong.2d Sess. *reprinted in* 1966 U.S.C.C.A.N. 2502, 2503, 2513. We also believe, however, that Congress did not intend for the government to be penalized for excusable ignorance. *Kass,* 740 F.2d at 1497; *see* S.Rep. No. 1328, 89th Cong., 2d Sess. *Reprinted in* 1966 U.S.C.C.A.N. 2502, 2507 (recognizing "the difficulties of Government operations due to the size and complexity of the Government.") To satisfy Congressional intent, district courts should not view a failure to exercise reasonable diligence, inconvenience, and even some hardship on the part of government as grounds for tolling the limitations period. We agree with the Eleventh Circuit which said "Congress could not ... be completely forgiving of government delay and still be true to its motives in enacting a statute of limitations." *Kass,* 740 F.2d at 1497; *see also Gavilan Joint,* 849 F.2d at 1250.

■ We further believe the district court should consider FOGRMA in making the reasonableness determination. It is the duty of

---

**6.** The same type of concerns are voiced in the amicus curiae brief.

**7.** For example, if a breach is very egregious or the government is somehow informed that the breach occurred, then the statute of limitations may commence to run at the time of the breach.

the courts to interpret two federal statutes so as "'to give effect to each if we can do so while preserving their sense and purpose.'" *Pittsburgh & Lake Erie R.R. Co. v. Railway Labor Executives' Ass'n,* 491 U.S. 490, 510, 109 S.Ct. 2584, 2596, 105 L.Ed.2d 415 (1989). Section 103(b) of FOGRMA, 30 U.S.C. § 1713(b), requires lessees to maintain records "for 6 years after the records are generated unless the Secretary [of the Interior] notifies the record holder that he has initiated an audit ... involving such records and that such records must be maintained for a longer period." Although we do not believe § 1713(b) defines what is reasonable in every context under § 2416(c), it is clear that if the government fails to initiate an audit within six years after the records were generated, the delay is per se unreasonable. This is because under § 1713(b) a record holder is exempt from the obligation to maintain its records if an audit is not started within the six-year period.

■ Finally, we note that Phillips asserts the trial court incorrectly applied the one-year provision of § 2415(a), arguing the September order was neither an "administrative proceeding" nor "required by contract or by law." This issue was not raised by Appellants on appeal and Phillips does not raise the issue on cross-appeal. As this issue is not necessary for the disposition of this appeal, we decline to address it.[8]

We **REVERSE** the district court and **REMAND** for the necessary factual determinations consistent with this opinion.

---

**8.** We also note that as neither party raised the issue, we will not address whether the district court was correct in holding the limitations period continued to run during the pendency of the judicial proceedings.