**MARATHON OIL COMPANY, Plaintiff,**

**v.**

**Bruce BABBITT, Bob Armstrong, Thomas Fry, and the United States Department of the Interior, Defendants.**

**No. A93–0503 CV (JKS).**

United States District Court,
D. Alaska.

Sept. 30, 1996.

---

1. In fact, Congress is considering legislation that would limit the filing of habeas actions.

---

Daniel T. Quinn, Richmond & Quinn, Anchorage, AK, and Richard J. Kolencik, Marathon Oil Company, Findlay, OH, for plaintiff.

David W. Gehlert, United States Department of Justice, Environment and Natural Resources Division, Denver, CO, Bruce M. Landon, United States Department of Justice, Environment and Natural Resources Division, Anchorage, AK, and Lois J. Schiffer, Office of the Attorney General, Washington, DC, for defendants.

## ORDER
### Motions for Summary Judgment

SINGLETON, Chief Judge.

█ Marathon Oil Company ("Marathon") brings this action seeking judicial review of an order directing it to pay additional royalties on production derived from land leased from the government. Docket No. 1 (appealing an order issued by the Minerals Management Service of the Department of the Interior ("MMS") in Case No. MMS–92–0560–O & G).[1] This Court has jurisdiction. 28 U.S.C. §§ 1331, 1361 and 5 U.S.C. § 701, *et seq.* The only issue in this case is whether the six-year statute of limitations found at 28 U.S.C. § 2415(a)[2] applies to MMS administrative orders to pay royalties pursuant to FOGRMA. *See* Docket No. 33. The six-year statute of limitations provision contained in 28 U.S.C. § 2415(a) does not apply exclusively to the Department of the Interior. Thus, the Court will exercise its independent judgment, give no special deference to the agency decision, and will review the agency determination for conclusions not in accordance with the law. *See* 5 U.S.C. § 706(2).

█ There are no disputed issues of material fact. Marathon concedes that the royalty payments were owed, but contends that collection of those royalties, which accrued between 1983 and 1986, are barred by the six-year statute of limitations governing actions by the United States to collect money damages based on a contract, express or implied. Docket No. 33; *see* 28 U.S.C. § 2415(a).[3] The government argues that the statute does not apply to actions to enforce MMS administrative orders. Docket Nos. 36, 38. It makes an alternate argument that

---

**1.** The order is based upon authority derived from the Federal Oil and Gas Royalty Management Act of 1982 ("FOGRMA"). 30 U.S.C. § 1701, *et seq.*

**2.** The disputed statute of limitations begins as follows:

> Subject to the provisions of section 2416 of this title, and except as otherwise provided by Congress, *every action for money damages* brought by the United States or an officer or agency thereof *which is founded upon any contract express or implied in law or fact,* shall be barred unless the complaint is filed within six years after the right of action

accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later …

28 U.S.C. § 2415(a) (emphasis added).

**3.** Marathon arguably owes royalties on payments from Unocal that began in March of 1982, but the government is only seeking to recover royalties for the period October 1, 1983 to September 30, 1989, which is within the six years preceding its notice of audit dated September 19, 1989.

the action is timely. *Id.* Both parties move for summary judgment, and oral argument has been requested. Docket No. 33 (Marathon's motion for summary judgment); Docket No. 36 (government's motion for summary judgment); Docket No. 34 (request for oral argument). After reviewing the record, the Court concludes that oral argument will not be helpful. D.AK. LR 7.1(i).[4]

The government contends that the relief it is seeking is not "money damages" and therefore the statute of limitations pursuant to 28 U.S.C. § 2415(a) cannot apply.[5] In support of this argument, the government cites to *Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) and various unpublished decisions which have relied on the holding and reasoning in *Bowen.* The government's reliance on *Bowen* is misplaced. *Bowen,* by a clear implication, rests on the historic distinction between actions at law and actions in equity. Legal actions are controlled by applicable statutes of limitations; equitable actions are controlled by the more flexible doctrine of "laches."

In *Bowen,* the Supreme Court addresses a jurisdictional dispute under § 702 of the Administrative Procedure Act. In that case, the State of Massachusetts sued the Department of Health and Human Services for reimbursement of certain expenditures. In essence, the action was in equity for restitution. The jurisdictional dispute turned on whether the State of Massachusetts' claim for reimbursement was actually a claim at law for "money damages." *Bowen,* 487 U.S. at 893, 108 S.Ct. at 2731–32. Unlike *Bowen,* the instant case involves an action by the United States for royalties owed but unpaid. The action is clearly for damages, not restitution.

There have been certain analogous situations where the *Bowen* holding has been applied. *See Wileman Bros. & Elliott, Inc. v. Espy,* 58 F.3d 1367, 1385 (9th Cir.1995) (citing to *Bowen* and holding that "[t]he fact that the property taken from the handlers

was money does not alter its character as a specific remedy in this case."); *see also Zellous v. Broadhead Assoc.,* 906 F.2d 94, 99 (3d Cir.1990) (plaintiffs were former, present, and prospective HUD tenants contending that they were forced to pay a higher share of their income as rent because of a failure to make timely adjustments in their utilities allowances; the Third Circuit held that jurisdiction under § 702 was proper because the relief sought was not in the form of money damages). These were also equitable actions for restitution.

Although the holding in *Bowen* has been applied by analogy in certain circumstances, the Ninth Circuit has indicated that it is reluctant to take an expansive view of *Bowen. See Native Village of Noatak v. Blatchford,* 38 F.3d 1505 (9th Cir.1994). In *Noatak,* the plaintiff argued that his claim for a certain amount of money was a claim for specific relief and therefore was not barred by the Eleventh Amendment. The Ninth Circuit rejected the plaintiff's attempt to apply *Bowen* and stated that "[a]lthough the [*Bowen* ] Court's discussion of the differences between monetary and specific relief was quite lengthy, it was within the context of the APA and should not be treated as a widely applicable, general rule for determination of the nature of the relief sought." *Noatak,* 38 F.3d at 1513.

■ This Court concludes that efforts by the government to collect royalties pursuant to 30 U.S.C. § 1701 and the applicable regulations are more analogous to actions at law for damages than to actions in equity for restitution. These efforts are therefore subject to the applicable statute of limitations, 28 U.S.C. § 2415(a), because the government is, in effect, seeking money damages and bases its claim upon a contract, *i.e.,* an oil and gas lease. Despite the applicability of 28 U.S.C. § 2415(a), the government's collection action is timely because the statute was tolled during the administrative proceeding from the time the initial audit was announced (Sep-

---

**4.** On June 26, 1996, the Court issued a tentative decision (Docket No. 39) and allowed the parties to file supplemental memoranda in response to the tentative decision. Marathon responded at Docket No. 40, and the government responded at

Docket No. 41. Both parties also filed notices of supplemental authority. *See* Docket Nos. 42 and 44.

**5.** *See* footnote 2 for text of 28 U.S.C. § 2415(a).

tember 19, 1989) until the announcement of the final decision by the responsible agency (November 16, 1993).[6]

 It is important to recognize at the outset that the parties' debate over whether the statute does or does not apply to the administrative proceeding itself seems beside the mark since the government must come to court[7] to enforce any such order. *Cf.* 30 U.S.C. § 1722(a).[8] Court enforcement of the order is governed by the statute. The Court has considered the government's arguments to the contrary and is not persuaded. First, the government contends that it is enforcing an administrative order and that its rights flow from the order, not from the contract. Docket Nos. 36, 38. A related argument was recently considered and rejected by the Ninth Circuit. *See United States v. Suntip Co.,* 82 F.3d 1468, 1475–77 (9th Cir.1996). Second, the government alternatively argues that its rights flow from a statute, not the contract. Docket Nos. 36, 38. An argument related to this point was considered and rejected in *United States v. Westerband–Garcia,* 35 F.3d 418, 420–21 (9th Cir.1994). The Court is satisfied that the government's right to royalties is based upon a contract and any effort to collect those royalties in court is an action for money damages. *See* 30 C.F.R. § 202.100(b)(3) (where terms are inconsistent, lease rather than regulations govern government's rights to royalty); *see also Phillips Petroleum Co. v. Lujan,* 4 F.3d 858, 860–61 and n. 1 (10th Cir.1993).[9]

6. The dispute between the parties is very narrow on this record. Marathon appears to concede that the order directing it to pay an additional royalty triggered the administrative process and is willing to pay any royalty that became due within six years of the date of that order. Docket Nos. 33, 37. It appears that notice of the audit, rather than the notice to pay royalties on September 28, 1992, should toll the statute of limitations. Commencement of the audit assures that the government is not sleeping on its rights and is a reasonable means of assuring that the lessee is performing its obligations under the lease. *Phillips Petroleum Co. v. Lujan,* 4 F.3d 858, 864 (10th Cir.1993) (if government fails to initiate an audit within six years after records required to be kept by 30 U.S.C. § 1713(b) were generated, the delay is *per se* unreasonable). Here, the earliest royalty claimed is for the period October 1, 1983, less than six years before commencement of the audit. The other relevant dates appear to be as follows: 1) December 22, 1989, when the government first addressed the lease in question; 2) late 1991, when the Marathon–Unocal agreement was first evaluated; and 3) the October 1, 1992 letter suggesting that additional royalties were due. Thus, a period of slightly over three years elapsed between the commencement of the audit and the issuance of the order of September 28, 1992, which was confirmed by the Assistant Secretary in a decision dated November 16, 1993, resulting in this action.

7. The government is correct that where one party to a continuing economic relationship has the greater bargaining power, it may use that power to extract benefits in the future to make up for anything it feels it should have received in the past. For example, the government sometimes imposes civil penalties on those who do not comply with a statute. This, however, does not detract from the fact that if the government, in this case, wishes to recover the past due royalties and the various companies cannot be coerced by civil penalties, the government will have to come to court. There is no other way to collect "money damages" if the debtor refuses to pay. *See* Docket No. 41 (government responding to tentative order by contending that the government is not required to file a law suit to enforce its orders). In any event, the fact that a party has equitable remedies available does not turn an action at law into an action in equity where a party seeks money damages in lieu of equitable relief.

8. Assuming that the government is bringing an action in equity pursuant to § 1722(a) to specifically enforce its right to royalties, the Court would still construe this as an action for money damages controlled by the statute. *See, e.g., United States v. Ehrlich,* 643 F.2d 634, 637 and n. 1 (9th Cir.1981) (reserving the question whether § 2415(a) governs actions for specific performance and, by extension, other equitable actions to collect money). It is instructive that Congress has established a six-year statute of limitation governing the government's action to collect penalties. *See, e.g.,* 30 U.S.C. § 1755. Even if the government's action is in equity, the doctrine of laches applies and the six-year period contained at 28 U.S.C. § 2415(a) and 30 U.S.C. § 1755 marks the boundary of reasonableness. *But cf. Apache Survival Coalition v. United States,* 21 F.3d 895, 905–14 (9th Cir.1994) (discussing the public policy implications of applying laches). For instance, the government will be deemed to have slept on its rights if it delays filing suit for more than six years, and prejudice will be presumed.

9. The government seeks to rely upon unpublished decisions in apparent violation of D.AK. LR 7.1(c). The government seeks to avoid rejection of these decisions in reliance on the exception for "unpublished decisions in the same or a related case by another court." That language tracks Ninth Circuit Rule of Appellate Procedure 36–1. Thus, a "related" case is one relevant under the

■ The Court must next determine when the government's action accrued. For purposes of this case, the Court concludes that the government's action accrued when the royalty payments were due but unpaid. 30 C.F.R. § 218.50; *Phillips*, 4 F.3d at 861.[10] The final and dispositive question is whether the statute was tolled during the audit and subsequent administrative proceedings. The Court concludes that it was. *See Phillips*, 4 F.3d at 861–64. An evidentiary hearing is not required to determine the state of the government's knowledge because the time which elapsed between the accrual of the debt in November of 1983, the notice of audit in September of 1989, and the notification of the government's demand for additional royalty in September of 1992 was reasonable as a matter of law[11] and the remaining time

doctrines of law of the case, *res judicata*, or collateral estoppel. *See* Commentary to D.Ak. LR 7.1, Proposed Revised Local Rules of the United States District Court for the District of Alaska. Since none of the unreported cases upon which the parties wish to rely are related in this sense, the Court will therefore not consider them as precedent. The parties may of course borrow arguments and reasons wherever they may find them.

Subsequent to filing a response to this Court's tentative order, the government filed a notice of supplemental authority on September 19, 1996 directing the Court's attention to *Marathon Oil Company v. Babbitt*, Civil No. 94–N–1429, 1996 WL 640436 (D.Colo. August 29, 1996). *See* Docket No. 44. Although it is an unpublished decision, the government filed notice of the case under the assumption that the case is a related case under D.Ak. LR 7.1(c). Purportedly, the government contends that collateral estoppel should apply because the case in the District of Colorado involves identical parties and also addresses the same statute of limitations issue as in the instant case. The United States District Judge in that case granted summary judgment in favor of the government by means of alternative holdings. First, he held that 28 U.S.C. § 2415 does not apply because the government's action does not constitute an action for "money damages." *Marathon Oil Company v. Babbitt*, Civil No. 94–N–1429 at 15–16, 1996 WL 640436 (D.Colo. August 29, 1996). In the alternative, and assuming *arguendo* that § 2415 applies, he held that summary judgment should still be granted because the administrative savings clause gave the government one year after final administrative decisions have been made to file its cause of action for money damages. *Id.* at 19–21.

The application of collateral estoppel is a discretionary matter. *See, e.g., Brock v. Williams Enterprises of Georgia, Inc.*, 832 F.2d 567, 574 (11th Cir.1987). Although collateral estoppel can be applied to pure issues of law, *see* RESTATEMENT (SECOND) OF JUDGMENTS § 27 and § 28 comment b (1982), this Court declines to apply collateral estoppel in this instance. The application of collateral estoppel to a pure issue of law is less favored than a mixed question of law and fact, especially when the question of law involves statutory construction. *See United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Georgia, Inc.*, 755 F.Supp. 1040, 1046 (S.D.Ga.1990). In addition, when a decision of a court of the first instance is based on alternative determinations, the decision could be characterized as a nonessential determination because the two alternatives may not have been analyzed as closely, and because the losing party may have been dissuaded from appealing the decision due to the likelihood that at least one of them might be upheld. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 27 comment i (1982); *see also Ritter v. Mount St. Mary's College*, 814 F.2d 986, 993 (4th Cir.1987) ("A corollary to the general rule of collateral estoppel is that, where the court in the prior suit has determined two issues, either of which could independently support the result, then neither determination is considered essential to the judgment."). Therefore, this Court declines to consider the District of Colorado decision as binding on this case. Nevertheless, this Court still considered the decision's reasoning and holding regarding the applicability of § 2415(a) but, with all due respect, rejected them.

10. This ruling is in accord with the general view that an action for breach of contract accrues when the contract is breached. An alternate view would apply a discovery rule to actions for breach of contract as well as actions in tort and hold that the government's claim did not accrue until it knew of Marathon's agreement with Unocal and the significance of that agreement on the issue of royalties. *Cf. Bauman v. Day*, 892 P.2d 817, 827–28 (Alaska 1995) (discussing policy reasons for applying a discovery rule to statutes of limitations governing contract actions). A discovery rule applied to actions by the United States may be particularly appropriate. It is not necessary to pursue this issue, however, since recognizing tolling would probably reach the same result. *Phillips*, 4 F.3d at 861–64 (applying 28 U.S.C. § 2416(c)); *but see United States v. Gavilan Joint Comm. College Dist.*, 849 F.2d 1246 (9th Cir.1988) (suggesting an evidentiary hearing to determine when the government should have known of the breach).

11. There are really two time periods in question: (1) There is a question regarding the time that elapsed between the royalties becoming due in November of 1983 and the notice of audit in September of 1989, two months shy of six years thereafter. Section 1713 strongly suggests that Congress considers an audit within six years reasonable because it requires the lessees to

was expended allowing Marathon to exhaust its administrative remedies. 30 C.F.R. §§ 241.51, 243.2, 243.3; *see United States v. Suntip*, 82 F.3d at 1476 (government must seek relief at agency level within six years after claim accrues but thereafter is allowed one year from final agency action to seek enforcement of agency decision in court).[12]

**IT IS THEREFORE ORDERED:**

The Court **GRANTS** the government's motion at **Docket No. 36** and **DENIES** Marathon's motion at **Docket No. 33**. **The Clerk of Court is directed to enter judgment in favor of the government. Each party should bear its own costs.**

maintain records for that period, subject to extension if an audit is instituted. 30 U.S.C. § 1713. Consequently, the Court concludes that, as a matter of law, the audit in this case was timely. (2) The more difficult question is whether the period from September of 1989 to September of 1992 was an unreasonably long time to conduct the audit and determine and assess the arrearage. Given that this three-year period is only one-half of the six years allowed for suit, the Court concludes that three years is reasonable as a matter of law. The Court would reach the same conclusion if it held that the doctrine of laches could be invoked against the government since it does not appear that the government slept on its rights during the administrative process prior to September of 1992, and there is no evidence that Marathon was prejudiced by any delay. The records upon which Marathon would rely to dispute claims by the government to additional royalty are within its possession and it was on notice to keep those records by the notice of audit. *See* 30 U.S.C. § 1713; *Apache Survival Coalition v. United States*, 21 F.3d 895, 907–914 (9th Cir.1994) (discussing unreasonable delay and undue prejudice).

12. In reaching this conclusion, the Court considers and rejects Marathon's argument that an administrative proceeding is not necessary to trigger judicial enforcement. The Court is satisfied that the government's obligation to collect disputed royalties by means of 30 U.S.C. § 1722 is suspended by the deposit of security by the lessee so that it can exhaust its administrative remedies. This is so because the lessee would have to litigate any objection it had to the payment demanded before the agency in the form of an appeal. *See* 30 C.F.R. § 243.3 (exhaustion of administrative remedies). In order to permit exhaustion, payment must be suspended while the administrative process continues. 30 C.F.R. § 243.2. Thus, if the government attempted to collect the royalties before Marathon's objections were administratively resolved, Marathon would have been entitled to a stay. *See Suntip*, 82 F.3d at 1477 n. 12 (discussing *United States v. BLH, Inc.*, 773 F.2d 232, 234 (8th Cir.1985)). True, as Marathon contends, the government could short-circuit the administrative process by bringing a lawsuit to collect unpaid royalties as an initial matter. But if it did, its action for royalties would immediately accrue and would be barred, at the most, six years thereafter. The same would be true if Marathon, instead of objecting to the demand for payment, simply did not pay. In such a case, both the government's contract action to collect the royalties and any action to collect civil penalties would lapse six years after the payments became due.