**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 10 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

OXY USA, INC.,

    Plaintiff-Appellee,

MOBIL EXPLORATION & PRODUCING U.S., INC.,

    Plaintiff,

v.

BRUCE BABBITT, Secretary, Department of Interior; BOB ARMSTRONG, Assistant Secretary, Land and Minerals Management; CYNTHIA QUATERMAN, Director, Minerals Management Service; ERASMO GONZALES, Chief, Houston Compliance Division, Minerals Management Service; GARY L. JOHNSON, Chief, Dallas and Tulsa Compliance Offices, Minerals Management Service,

    Defendants-Appellants.

No. 98-5222

UNION OIL COMPANY OF CALIFORNIA; INDEPENDENT PETROLEUM ASSOCIATION OF AMERICA; NATIONAL MINING ASSOCIATION; AMERICAN CHEMISTRY COUNCIL; AMERICAN PETROLEUM INSTITUTE; CHAMBER OF COMMERCE OF THE UNITED STATES; AMERICAN TORT REFORM ASSOCIATION; NATIONAL ASSOCIATION OF MANUFACTURERS; LAWYERS FOR CIVIL

JUSTICE; SHELL OIL COMPANY.

Amici Curiae.

---

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 96-CV-1067-K)**

---

**ON REHEARING EN BANC**

---

Oliver S. Howard (Teresa B. Adwan, Dennis C. Cameron and Amelia A. Fogleman of Gable & Gotwals, P.C.; Patricia Dunmire Bragg and Stephen R. Ward, of Gardere & Wynne, L.L.P., Tulsa, Oklahoma, with him on the briefs) of Gable & Gotwals, P.C., Tulsa, Oklahoma, for Plaintiff-Appellee.

Sean H. Donahue (Lois J. Schiffer, Assistant Attorney General; Peter Coppelman, Acting Assistant Attorney General; William B. Lazarus, Donna S. Fitzgerald and Robert L. Klarquist, Department of Justice, with him on the briefs) of the Department of Justice, Washington, D.C., for Defendants-Appellants.

David L. Bryant, of Bryant Law Firm PLLC, Tulsa, Oklahoma, filed a brief for amicus curiae Union Oil Company of California.

Michael E. Smith and Sharon Taylor Thomas of Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Oklahoma City, Oklahoma, filed a brief for amici curiae Independent Petroleum Association of America, and National Mining Association.

Victor E. Schwartz, Timothy M. Biddle, Mark A. Behrens, and Donald J. Kochan, of Crowell & Moring LLP, Washington, D.C., filed a brief for amici curiae American Chemistry Council (David F. Zoll and Donald D. Evans, Arlington, Virginia, of counsel on the brief); American Petroleum Institute (G. William Frick, Washington, D.C., of counsel on the brief); Chamber of Commerce of the United States (Stephen A. Bokat of National Chamber Litigation Center, Inc., Washington, D.C., of counsel on the brief); American Tort Reform Association (Sherman Joyce, Washington, D.C., of counsel on the brief); National Association of Manufacturers (Jan S. Amundson, Washington, D.C., of counsel on the brief);

and Lawyers for Civil Justice (Barry Bauman, Washington, D.C., of counsel on the brief).

L. Poe Leggette and Nancy L. Pell of Fulbright & Jaworski L.L.P., Washington, D.C.; David L. Bryant, Tulsa, Oklahoma; and Michael E. Coney, Of Counsel, Shell Oil Company, New Orleans, Louisiana, filed a brief for amicus curiae Shell Oil Company.

---

Before **TACHA, BRORBY,**[*] **EBEL**, **KELLY**, **HENRY**, **BRISCOE**, **LUCERO**, and **MURPHY**, Circuit Judges.

---

**BRORBY**, Circuit Judge.

---

The issue before the en banc court is straightforward: Does the six-year statute of limitations provided by 28 U.S.C. § 2415(a) govern Mineral Management Service (MMS) orders directing oil and gas lessees to pay additional royalties on production procured prior to September 1, 1996?[1] We hold it does.

---

[*] The Honorable Wade Brorby, Senior Circuit Judge, was an active circuit judge at the time of the rehearing en banc.

[1] The 1996 amendments to the Federal Oil and Gas Royalty Management Act include an express seven-year statute of limitations on MMS royalty demands, and make clear that 28 U.S.C. § 2415 does not apply to such claims. 30 U.S.C. § 1724(b)(1), (3). However, the 1996 amendments apply only to oil and gas production occurring after September 1, 1996. *See* notes to 30 U.S.C. § 1724. The circumstances in this case and any other case in which the MMS seeks additional royalties for oil and gas produced from federal leases prior to September 1, 1996 continue to present live controversies governed by our holding here.

BACKGROUND

In December 1996, the MMS issued an order directing OXY USA, Inc.

(OXY) to pay additional royalties of $551,693.26, plus interest, for oil production

from federal onshore and offshore leases in California for the period January

1980 - September 1983.[2]  OXY brought suit seeking, *inter alia*, a declaration the

government's claims were time-barred under 28 U.S.C. § 2415(a).  The district

court granted OXY summary judgment based on statements from *Phillips

Petroleum Co. v. Lujan*, 4 F.3d 858, 860 & n.1 (10th Cir. 1993) ("*Phillips III*"),

indicating that § 2415(a) does, indeed, bar belated MMS orders.[3]  The government

---

[2]  Federal oil and gas lessees typically meter and report their own
production and calculate the appropriate royalty payment, subject to the MMS
conducting a compliance audit.  *See* 30 C.F.R. §§ 217.50, 218.50.  The Federal
Oil and Gas Royalty Management Act authorizes the Secretary of Interior to
"audit and reconcile, to the extent practicable, all current and past lease accounts
for leases of oil or gas and take appropriate actions to make additional collections
or refunds as warranted."  30 U.S.C. § 1711(c)(1).  The administrative "order to
pay" at issue resulted from MMS audits of OXY's California production and the
MMS' implementation of a new royalty computation method.

[3]  The panel in *Phillips III* stated:

Both parties recognize, and we agree, that oil and gas leases are
contracts.  Thus, we likewise agree with the parties that 28 U.S.C. §
2415(a) is the controlling statute of limitations as it applies to "every
action for money damages brought by the United States ... which is
founded upon any contract."

4 F.3d at 860 n.1 (citations and emphasis omitted).

appealed. A divided panel of this court reversed, holding (1) the remarks in *Phillips III* concerning the applicability of 28 U.S.C. § 2415(a) are dicta, and (2) § 2415(a) is inapplicable because the MMS orders OXY challenges are not "actions" under that provision. *OXY USA, Inc. v. Babbitt*, 230 F.3d 1178, 1185-90 (10th Cir. 2000).

We granted Petition for Rehearing in consolidated appeals, including *Shell Oil Co. v. Babbitt,* Nos. 98-5252 & 99-5098. As a result of settlement, we subsequently dismissed the *Shell Oil* cases by Order dated March 21, 2001. By that same Order, we agreed to treat the briefs filed in the *Shell Oil* cases as amicus briefs in this, the remaining appeal, *OXY USA Inc. v. Babbitt*, No. 98-5222.[4]

ANALYSIS

28 U.S.C. § 2415(a) provides in pertinent part:

Subject to the provisions of section 2416 of this title, and *except as*

---

[4] We accepted amicus briefs in support of the petition for rehearing en banc from Union Oil Company of California, Independent Petroleum Association of America, National Mining Association, American Chemistry Council, American Petroleum Institute, Chamber of Commerce of the United States, American Tort Reform Association, National Association of Manufacturers, and Lawyers for Civil Justice.

*otherwise provided* by Congress, *every action for money damages* brought by the United States or an officer or agency thereof which is *founded upon any contract* express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later ....

(emphasis added.)  The Government argues (1) § 2415(a) limits the time within which the MMS may commence a judicial action (*i.e.*, a lawsuit) to recover royalties, but not administrative collection proceedings; and (2) even if we determine the MMS order to pay constitutes an "action" under § 2415(a), it is not an action founded on contract, does not seek money damages, and is encompassed by the "otherwise provided by Congress" exception.[5]

Reviewing this matter *de novo*,[6] we conclude the statutory language,

---

[5]  In its response to OXY's Petition for Rehearing and Request for Rehearing En Banc, the government recommenced its argument (in agreement with the majority panel opinion) that the statements in *Phillips III* concerning the applicability of 28 U.S.C. § 2415(a) are dicta.  Because the en banc court may overrule the judgment of a three-judge panel, we need not determine whether the *Phillips III* statements are best characterized as dicta or binding precedent.  *C.f. In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993) (a panel is bound by the precedent of prior panels absent en banc reconsideration), *cert. denied*, 513 U.S. 807 (1994). Our en banc ruling in this case now constitutes the law of the circuit on this issue.

[6]  As the panel correctly noted, we review a grant of summary judgment, as well as questions of law turning on the interpretation and application of federal statutes, de novo.  *OXY USA*, 230 F.3d at 1183; *see also United States v. 162 MegaMania Gambling Devices*, 231 F.3d 713, 718 (10th Cir. 2000).

together with a forthright statutory scheme and purpose, clearly instruct that the six-year statute of limitation under 28 U.S.C. § 2415(a) applies to the MMS orders in this case.

*"Every Action"*

We decipher what constitutes "every action" affected by § 2415(a) by considering the language and structure of the statute as a whole. *See Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 556 (10th Cir.) (citing *Dole v. United Steelworkers of America*, 494 U.S. 26, 41 (1990)), *cert. denied*, 528 U.S. 813 (1999). Although we are instructed to strictly construe any statute of limitation sought to be applied to bar rights of the Government, *see Badaracco v. Commissioner of Internal Revenue*, 464 U.S. 386, 391 (1984), we are not authorized to contort the language or structure of a statute of limitations in order to reach a result favorable to the government.

The phrase "every action" is patently broad, and is expressly limited in scope only by reference to the possibility of a specific exception "otherwise provided by Congress." 28 U.S.C. § 2415(a). Congress' subsequent reference to the filing of a "complaint" within six years cannot fairly be read to limit this broad language to formalized judicial proceedings in light of (1) the statute's

-7-

obvious purpose to level the playing field between the government and private litigants by forcing the government to promptly assert its claims; and (2) a reading of the entire text of § 2415, including subsections (f) and (i), which evidence Congress' desire to deal with extra-judicial agency actions as well as judicial actions.

The express purpose of 28 U.S.C. § 2415(a) was to establish a general statute of limitations on contract claims asserted by the government or a government agency. Congress believed the imposition of a limitations period on government claims would compel government agencies to assert their claims promptly, thereby putting the government in a position more nearly equal to that of private litigants. *See* S. Rep. No. 89-1328, at 2 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2503-04*; see also United States v. Hanover Ins. Co.*, 82 F.3d 1052, 1055-56 (Fed. Cir. 1996); *Phillips III*, 4 F.3d at 863 ("The legislative history in support of § 2415(a) indicates Congress was motivated in part by notions of fairness and equity in government dealings with private litigants, and further motivated to reduce the costs of record keeping and encourage prompt agency actions on claims."). In the words of the Federal Circuit,

> [T]he clear purpose of Congress in passing [section 2415] was to promote fairness to parties defending against stale Government contract and tort claims notwithstanding whatever prejudice might accrue thereby to the Government as a result of the negligence of its

officers.

*S.E.R., Jobs for Progress, Inc. v. United States*, 759 F.2d 1, 8 (Fed. Cir. 1985) (footnote omitted). An interpretation of § 2415 permitting federal agencies to avoid the limitation period by utilizing administrative orders to collect monies owed under contract obviously would thwart this purpose. An interpretation of § 2415 encompassing such administrative orders within the phrase "every action" obviously serves this purpose. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 64, 575 (1982) (giving preference to a reasonable alternative interpretation consistent with legislative purpose over an interpretation that would produce absurd results).

The structure of § 2415 as a whole further advocates a broad interpretation of the phrase "every action." To elaborate, subsection (f) includes two narrowly drafted exceptions to the time-bar, permitting the government to defensively assert time-barred claims by way of offset or counter claim. 28 U.S.C. § 2415(f). Section 2415(i), added in 1982, expressly exempts administrative offsets from the six-year limitations period set forth in § 2415(a). 28 U.S.C. § 2415(i); *see also* S. Rep. No. 97-378, at 16 (1982), reprinted in U.S.C.C.A.N. 3377, 3392 (explaining that § 2415(i) "allows collection of delinquent debts owed the government by administrative offset beyond the six-year statute of limitations"). We agree with

the Federal Circuit that these provisions demonstrate Congress intended for § 2415(a) to encompass more than the filing of a "complaint" in court. *See Hanover Ins. Co.*, 82 F.3d at 1055 ("Administrative offset is not a judicial action. Thus, Congress has considered and dealt not only with judicial actions in section 2415, but with extra-judicial agency actions as well."). More important, if Congress did not intend § 2415(a) to apply to administrative proceedings, then § 2415(i) arguably is superfluous. We must avoid, whenever possible, a statutory interpretation that would "render superfluous other provisions in the same enactment." *Freytag v. Commissioner of Internal Revenue*, 501 U.S. 868, 877 (1991) (quotation marks and citation omitted).

In sum, the language, purpose and structure of § 2415 manifest Congress' clear intent to impose a limitations period on administrative as well as judicial claims for unpaid royalties. Congress gave no indication agencies are free to assert their claims at any time by means other than court actions, unencumbered by the six-year limitation period. As Judge Brown so aptly noted in his dissent to the panel opinion, "excluding administrative collection proceedings from the definition of 'action' leads to irrational results and permits government agencies to evade the statute of limitations through procedural gimmickry." *OXY USA*, 230 F.3d at 1193. We are confident Congress did not intend § 2415 to be the means

to this irrational end. The MMS order to pay royalties is an "action" under 28 U.S.C. § 2415(a).

*"Founded on Contract"*

We summarily reject the government's argument that actions to collect royalties under federal oil and gas leases are not based on contract. We have long-recognized that oil and gas leases are contracts. *Phillips III*, 4 F.3d at 860 n.1 (citing *Reese Exploration, Inc. v. Williams Natural Gas*, 983 F.2d 1514, 1518-19 (10th Cir. 1993)). The government itself has long recognized that the obligation of private entities to pay oil and gas royalties to the federal government derives from the execution of a valid federal lease. *See* Appellant's Opening Brief, Statement of Facts, at 5 ("All [federal and Indian] mineral leases provide for the payment of royalties."); Memorandum, "Time for Commencing Actions to Collect Royalties, Rents, or Other Payments," from Frederick N. Ferguson, Ass't Solicitor, Division of Minerals, to Chief, Conservation Division, Geological Survey at 1-2 (May 10, 1974) ("Royalties are collected by the Geological Survey pursuant to leases .... In all cases, the rights of the government as lessor and the rights of the lessee are embodied in a lease. A lease is a contract, and failure of the lessee to pay rent or royalties when due gives the lessor an immediate right to

sue for breach. The usual remedy for breach of contract is money damages.")

The fact that the Secretary of the Interior administers federal oil and gas leases

through the MMS, applying applicable royalty assessment (valuation) and

collection regulations promulgated in accordance with the Federal Oil and Gas

Royalty Management Act, 30 U.S.C. § 1701 *et seq.*, and other mineral leasing

statutes, simply does not change the contractual underpinnings of the lessee/lessor

relationship or the legal source of the royalty payment obligation MMS seeks to

enforce. Moreover, the issue and facts in this case are easily distinguished from

those addressed in the cases the government cites in support of its argument that

the payment of royalties is founded primarily on statutes and regulations. *See*

*Katz v. Cisneros*, 16 F.3d 1204, 1209 (Fed. Cir. 1994) (answering threshold

jurisdictional and sovereign immunity questions, the court concluded that

plaintiff/property owner suing to compel the Department of Housing and Urban

Development to calculate Housing Assistance Payments contract rent in

accordance with federal housing regulations sought "judicial interpretation of a

federal regulation," not "declaratory relief in the performance of a contract");

*Transohio Sav. Bank v. Director, Office of Thrift Supervision*, 967 F.2d 598, 609

(D.C. Cir. 1992) (characterizing savings and loan association's suit challenging

the Office of Thrift Supervision's minimum capital requirements as an action for

injunctive and declaratory relief, not money damages, and recognizing "[t]he

-12-

answer to the sovereign immunity and jurisdiction questions depends not simply on whether a case involves contract issues, but on whether, despite the presence of a contract, plaintiffs' claims ... stem from a statute or the Constitution"). Accordingly, we hold the MMS royalty collection action is founded on contract.

*"Money Damages"*

According to the MMS, quoting an unpublished decision from the Fifth Circuit, orders directing lessees to pay royalties "seek monies due under a contract with the government. Such contractual obligations cannot be considered compensatory," and "are therefore not barred by the limitations period of § 2415." Apt. Br. at 28-29 (quoting *Phillips Petroleum Co. v. Johnson*, 1994 WL 484506 (5th Cir., Sept. 7, 1994) (unpublished disposition) (*Phillips IV*)). We disagree with this narrow construction of the phrase "money damages" as used in 28 U.S.C. § 2415.[7]

We first note the apparent incongruity of the government's argument the royalties they seek by way of an administrative order-to-pay are not founded on

---

[7] The dissent's accusation that we ignore the phrase "for money damages brought by the United States," as that phrase might limit the application of § 2415, is patently misplaced.

contract, and its use here of unpublished Fifth Circuit authority referring specifically to royalties as "monies due under a contract" and "contractual obligations." *Phillips IV*, 1994 WL 484506 at *1. In any event, however, the Fifth Circuit rationale, based on its reading of *Bowen v. Massachusetts*, 487 U.S. 879 (1988), is neither binding nor persuasive.

The Supreme Court in *Bowen* concluded that the phrase "relief other than money damages," as used to waive sovereign immunity under the Administrative Procedure Act, 5 U.S.C. § 702,[8] encompassed suits for the enforcement of statutory mandates, notwithstanding that the mandate "happens to be one for the payment of money." 487 U.S. at 900 (determining that an action against the government seeking declaratory and injunctive relief from an order disallowing Medicaid reimbursement was not an action for "money damages" under 5 U.S.C. § 702). This is not an action to enforce a statutory mandate. For the reasons

---

[8] Section 702 states, in relevant part:

An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702.

-14-

stated above, it is an action on contract to enforce royalty payment obligations under a federal oil and gas lease. An award of damages is the common form of relief for breach of contract. E. Allan Farnsworth, *Farnsworth on Contracts* § 12.8, at 871 (2d ed. 1990); Memorandum, "Time for Commencing Actions to Collect Royalties, Rents, or Other Payments," from Frederick N. Ferguson, Ass't Solicitor, Division of Minerals, to Chief, Conservation Division, Geological Survey at 1-2 (May 10, 1974) ("A lease is a contract, and failure of the lessee to pay rent or royalties when due gives the lessor an immediate right to sue for breach. The usual remedy for breach of contract is money damages."). Moreover, the MMS' claims against OXY to collect royalties are substantively indistinguishable from other government claims to recover money owed under contracts governed by the limitations period in § 2415. *See, e.g., United States v. Sackett*, 114 F.3d 1050, 1052 (10th Cir. 1997) (action to recover on defaulted Small Business Administration loans); *Hanover*, 82 F.3d at 1055-56 (custom duties owed under surety contract); *United States v. Alvarado*, 5 F.3d 1425, 1428 (11th Cir. 1993) (claim for damages on a promissory note). We therefore hold the MMS order at issue constitutes an action for "money damages" under § 2415.

*"Except as Otherwise Provided"*

Having established that the MMS' efforts to collect royalties are, indeed,

actions founded on contract for money damages, we shift our focus to whether, as the government suggests, such actions fall within the "except otherwise provided by Congress" exception to § 2415 by virtue of the mineral leasing statutes and the Federal Oil and Gas Royalty Management Act. The government's argument on this point is difficult to distinguish from its argument that its administrative orders to pay royalties are based on statutes and regulations, not on contract. The government apparently believes that because Congress has enacted specific statutes governing oil and gas royalty assessment and collection, it never intended the general, six-year statute of limitations in § 2415 to apply to MMS orders. We disagree.

To the extent the Federal Oil and Gas Royalty Management Act provides a specific statute of limitations that expressly supersedes the general statute of limitations at 28 U.S.C. § 2415, that limitations period (seven years) applies only to oil and gas production occurring after September 1, 1996. *See* notes to 30 U.S.C. § 1724. Furthermore, if Congress believed the Federal Oil and Gas Royalty Management Act and its regulatory regime otherwise superseded § 2415, it would not have needed to amend that Act to include a specific statute of limitations in 1996. *See infra* note 1; 30 U.S.C. § 1724(a); H.R. Rep. No. 104-667, at 14, 34 (1996) (noting "multiple conflicting statutes of limitation for suits

to collect royalty payments" and conflicting court decisions led to the enactment of the seven-year limitations period); 142 Cong. Rec. S9677 (daily ed. Aug. 2, 1996) (statement of Sen. Nickles noting that differing court applications of the limitations period applicable to royalty collections had created a "climate of deep uncertainty in the payment of royalties"). When Congress included in § 2415 the language "except as otherwise provided by Congress," it addressed the specific concern that § 2415 not "affect existing statutes of limitations." S. Rep. No. 89-1328, *reprinted in* 1966 U.S.C.C.A.N. 2502. Prior to the 1996 Federal Oil and Gas Royalty Management Act amendments, there was no existing statute of limitations pertaining specifically to MMS royalty payment orders. The government's attempt to seek refuge in the "except as otherwise provided" exception fails.

CONCLUSION

For the reasons set forth, we conclude the MMS' demand that OXY USA, Inc. pay royalties going back to 1980 constitutes an action for money damages, founded on contract, and barred by 28 U.S.C. § 2415(a). We therefore **AFFIRM** the district court's order granting summary judgment in favor of OXY USA, Inc. and, in accordance with 10th Cir. R. 35.6, **VACATE** the panel decision, *OXY USA, Inc. v. Babbitt*, 230 F.3d 1178 (10th Cir. 2000).

**No. 98-5222, <u>Oxy USA, Inc. v. Babbitt</u>**

**BRISCOE**, Circuit Judge, with whom Judge **HENRY** joins, dissenting.

Because I conclude the orders issued by the Minerals Management Service (MMS) are not barred by 28 U.S.C. § 2415(a) or the Federal Oil and Gas Royalty Management Act (FOGRMA), 30 U.S.C. § 1701 *et seq.*, I respectfully dissent.

I.

As noted by the majority, § 2415(a) provides in relevant part:

> Subject to the provisions of section 2416 of this title, and except as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later.

Our review of § 2415(a) is circumscribed by several well-established principles of statutory construction. First and foremost, we must give effect to the plain language of the statute. See, e.g., <u>McLaughlin v. Richland Shoe Co.</u>, 486 U.S. 128, 135 (1988). Second, "[s]tatutes of limitation sought to be applied to bar rights of the Government, must receive a strict construction in favor of the Government." <u>Badaracco v. Comm'r of Internal Revenue</u>, 464 U.S. 386, 391 (1984); <u>accord</u> <u>United States v. Ward</u>, 985 F.2d 500, 502 (10th Cir. 1993) (interpreting § 2415(a)); <u>United States v. Hess</u>, 194 F.3d 1164, 1175 (10th Cir. 1999) (interpreting § 2415(b)). "[A]lthough we should not construe such a time-bar provision unduly restrictively, we must be careful not to

interpret it in a manner that would extend the waiver beyond that which Congress intended." United States v. Dalm, 494 U.S. 596, 608 (1990) (internal quotation omitted). Finally, we "are not authorized to rewrite a statute because [we] might deem its effects susceptible of improvement." Badaracco, 464 U.S. at 398.

The focus of our statutory interpretation is the language in § 2415(a), which places time limitations on "every action for money damages brought by the United States or an officer or agency thereof." The word "action," in its "usual legal sense" means "a lawsuit brought in a court; a formal complaint within the jurisdiction of a court of law."[1] Black's Law Dictionary at 28 (6th ed. 1990). The term "money damages" "normally refers to a sum of money used as compensatory relief . . . given to [a] plaintiff to substitute for a suffered loss." Bowen v. Massachusetts, 487 U.S. 879, 895 (1988); see also Black's Law Dictionary at 389 (defining "damages" as "[a] pecuniary compensation or indemnity, which may be recovered in the courts") (emphasis added). Taken together, the entire phrase plainly and indisputably refers to lawsuits brought by the federal government seeking compensatory relief for losses

---

[1] Nothing in the legislative history indicates that Congress intended to ascribe a specialized meaning to the term "action" in § 2415. The House Report speaks of "actions in the U.S. courts." H.R. Rep. No. 89-1534, at 2 (1966); see also id. at 3 (referring to "civil litigation" and "court congestion"). The Senate Report similarly provides that § 2415 applies to "civil actions" and "actions in the U.S. courts." S. Rep. No. 89-1328, at 1, 8 (1966); see also id. at 8 (making reference to "claims in the courts"); id. at 2, 7 (using the term "suit" as a synonym for "action").

suffered by the government. The majority gives short shrift to this statutory language and focuses on the words "every action." Without citing to any authority, the majority concludes these words are "patently broad" and "limited in scope only by reference to the possibility of a specific exception 'otherwise provided by Congress.'" Maj. Op. at 7. Not only does this conclusion overlook the plain meaning of the word "action," it ignores entirely the critical language that follows "every action," i.e., the phrase "for money damages brought by the United States." If there were any doubts about the scope of "every action" (which, for the reasons outlined above, I submit there legitimately are not), the ensuing language expressly limits the scope of the words to lawsuits filed by the United States seeking compensatory relief for damages suffered by the government.

If the plain language of § 2415(a) is not enough, other factors reinforce the conclusion that § 2415(a) is aimed solely at civil lawsuits filed by the government. Throughout § 2415, Congress linked the word "action" to the filing of a complaint. See 28 U.S.C. §§ 2415(a), (b), (d) (barring an action founded upon contract, founded upon tort, or to recover money erroneously paid "unless the complaint is filed" within a specified time period). A "complaint" is typically regarded as "[t]he original or initial pleading by which an action is commenced under codes or Rules of Civil Procedure." Black's Law Dictionary at 285. "Pleadings," in turn, normally include "[t]he formal allegations by the parties to a lawsuit of their respective claims and defenses, with the

intended purpose being to provide notice of what is to be expected at trial." Id. at 1152 (emphasis added). This is consistent with the statute's general title ("Time for commencing actions brought by the United States"), and statutory placement (part of Chapter 161, entitled "UNITED STATES AS PARTY GENERALLY"[2]), both of which clearly indicate that § 2415 is aimed solely at civil lawsuits filed by the government. It is also consistent with the legislative history, which indicates § 2415 was intended "to provide a more balanced and fair treatment of *litigants in civil actions involving the Government*." S. Rep. No. 89-1328, at 2 (1966), reprinted in 1966 U.S.C.C.A.N. 2502, 2503 (emphasis added); see also id. at 2503 (referring to "Government litigation covered by the bill"), 2508 (recognizing the "need for legislation providing for a statute of limitations which would apply to suits by the Government arising out of contracts"), 2509 ("The Government will be barred from asserting old and stale claims in the courts.").

The majority asserts that § 2415(f) and (i) indicate the word "action" was intended to encompass agency proceedings. Section 2415(f) sets forth two exceptions to § 2415(a)'s six-year period of limitations, allowing the government to defensively assert time-barred claims (1) as counterclaims if they "arise[] out of the transaction or occurrence that is the subject matter of the opposing party's claim," or (2) by way of

---

[2]  Notably, the other sections of Chapter 161 all refer to various aspects of civil litigation involving the federal government (e.g., the right to a jury trial in actions against the government; interest; costs and fees; payment of judgments).

-4-

offset if they "do[] not arise out of the transaction or occurrence that is the subject matter of the opposing party's claim." 28 U.S.C. § 2415(f). Section 2415(i) states that § 2415(a) cannot prevent the government from collecting any claim "by means of administrative offset." 28 U.S.C. § 2415(i); see S. Rep. No. 97-378, at 16 (1982) (explaining that § 2415(i) "allows collection of delinquent debts owed the government by administrative offset beyond the six-year statute of limitations"); id. at 28 (indicating that the purpose of § 2415(i) "is to extend the time period that agencies are allowed to offset benefits of debtors").

Although § 2415(i) and the latter portion of § 2415(f) (i.e., the portion allowing a governmental offset) unquestionably lend support to the majority's position, they cannot override the plain language of § 2415(a). Thus, "Congress's enactment of section 2415(i) [and the latter portion of section 2415(f)] is best understood as a clarification of the limited scope of section 2415(a), to ensure that section 2415 would not be applied to administrative offsets." United States v. Hanover Ins. Co., 82 F.3d 1052, 1057 (Fed. Cir. 1996) (Bryson, J., dissenting). As the dissenting judge in Hanover recognized:

> The legislative history of the 1982 amendment that added section 2415(i) provides support for that interpretation. Before 1982, the Justice Department had concluded that, absent an amendment, section 2415 could be invoked to prevent the administrative offset of debts more than six years old. The Comptroller General took the opposite position, arguing that section 2415 had no application to the administrative offset of debts. Noting the contrary position taken by the Justice Department,

-5-

> the Comptroller General recommended enacting subsection (i) "as a means of resolving the differences between us." By adopting section 2415(i), Congress thus did not have to decide whether the Department of Justice or the Comptroller General had the better of the argument as to the proper construction of the pre-1982 version of section 2415.
>
> In light of that background, the enactment of subsection (i) cannot be invoked to support the inference that Congress regarded section 2415(a) as extending to administrative actions. In any event, any such inference that could be drawn from the enactment of subsection (i) is not strong enough to overcome the clear language of section 2415(a). Particularly in light of the principle that statutes of limitations running against the sovereign are to be strictly construed, the apparent superfluity of section 2415(i) does not justify reading section 2415(a) to apply to cases that fall outside its explicit reach.

Id. (internal citations omitted); see also Gerrard v. United States Office of Educ., 656 F. Supp. 570, 573 n.3 (N.D. Cal. 1987) (stating that although Congress adopted § 2415(i) in response to a Justice Department determination that the six-year limitation period applied to administrative offsets, "[t]here is no indication in the legislative history that Congress agreed with the department's interpretation").

The majority also suggests that my interpretation of § 2415(a) will "lead[] to irrational results and permit[] governmental agencies to evade the statute of limitations through procedural gimmickry." Maj. Op. at 10 (internal quotations omitted). This argument admittedly has some force, and a divided panel of the Federal Circuit has rejected the notion that "Congress intended agencies to be free to assert their claims at any time and by any means other than court actions, unencumbered by the period of limitation imposed by section 2415(a)." Hanover, 82 F.3d at 1055. Nonetheless, this

potentially troubling result cannot be corrected by judicial fiat. While "interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available," Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 575 (1982), it is equally true that "[c]ourts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement." Badaracco, 464 U.S. at 398. As discussed above, "[t]his is especially so when courts construe a statute of limitations, which must receive a strict construction in favor of the Government." Id. (internal citation omitted); see also E.I. Dupont De Nemours & Co. v. Davis, 264 U.S. 456, 462 (1924) (establishing that an action by the government "is subject to no time limitation, in the absence of congressional enactment clearly imposing it"). Congress may not have "precisely envision[ed]" that agencies such as the MMS might be able to issue administrative orders that resemble claims for breach of contract, but "[i]t is enough that Congress intended that the language it enacted would be applied as we have applied it. The remedy for any dissatisfaction with the results in particular cases lies with Congress and not with this court. Congress may amend the statute; we may not." Griffin, 458 U.S. at 576.

## II.

Since, in my view, § 2415(a) does not apply, it is necessary to briefly address whether the FOGRMA independently requires the government to collect unpaid

royalties in a timely fashion. The statute directs the Secretary to "establish a comprehensive inspection, collection and fiscal and production accounting and auditing system to provide the capability to accurately determine oil and gas royalties, interest, fines, penalties, fees, deposits, and other payments owed, and to collect and account for such amounts in a timely manner." 30 U.S.C. § 1711(a) (emphasis added). Likewise, one of the goals of the statute is to "require the development of enforcement practices that ensure the prompt and proper collection and disbursement of oil and gas revenues owed to the United States and Indian lessors and those inuring to the benefit of States." 30 U.S.C. § 1701(b)(3) (emphasis added).

OXY argues that the words "prompt" and "timely" indicate that the FOGRMA limits the time in which the government can collect royalties. But the language and structure of the statute undermine that assertion. For example, the word "timely" appears in a section of the statute titled "Duties of Secretary." See 30 U.S.C. § 1711(a). If Congress had truly intended to limit the time in which the government can collect royalties, it would have referred to this section as a "statute of limitations." From my review of the FOGRMA when read as a whole, it is clear that Congress knew how to enact a statute of limitation when that was its intent. Section 1755 of title 30 expressly sets forth a six-year "Statute of limitations" for actions to recover certain penalties. Similarly, in the 1996 amendments to the FOGRMA Congress specifically enacted a seven-year "limitation period" – complete with provisions governing accrual

and tolling – for any "judicial proceeding or demand which arises from, or relates to, an obligation." See 30 U.S.C. § 1724(b).

OXY's reference to the word "prompt" is equally unavailing. The word "prompt" appears in a section of the statute titled "Congressional statement of findings and purposes." See 30 U.S.C. § 1701(b)(3). Once again, if Congress had intended to enact an independent timeliness requirement, it would have called it a "statute of limitations" and would have avoided locating it in a "statement of findings and purposes." Moreover, § 1701 merely lists the goals of the FOGRMA and sets forth a series of tasks that the Secretary "should" do. See 30 U.S.C. § 1701(a). It follows that any obligations created by § 1701 are precatory and aspirational, not mandatory.

Finally, the legislative history of the FOGRMA also undermines OXY's claim. The House Report contains no support for the proposition that Congress intended to limit the time in which the government can initiate administrative collection proceedings. Aside from a reference to § 1755, the Report makes no mention of a statute of limitations of any kind. Indeed, if anything, the Report supports the government's arguments that (1) the phrase "in a timely manner" in § 1711 refers to the "comprehensive inspection, collection and fiscal production accounting and auditing system" to be adopted by the Secretary (rather than to specific orders issued by the MMS); and (2) the words "timely" and "prompt" were inserted to "promote the revenue interests of the federal, state, and Indian beneficiaries of the federal leasing

programs and not to provide a shelter for royalty payors such as OXY." See Reply

Brief for the Appellants at 21. Among other things, the Report indicates that when

Congress enacted the FOGRMA it was primarily concerned with (1) lost revenues

resulting from poor royalty accounting practices by administrative agencies; (2)

substandard auditing and verification procedures; (3) lax security on certain lease sites

resulting in theft and fraud; and (4) an inadequate and inflexible array of enforcement

tools. I conclude Congress' use of the word "timely" in 30 U.S.C. § 1711(a) and the

word "prompt" in 30 U.S.C. § 1701(b)(3) was not intended to create a statute of

limitation in which the government must act to collect royalties.

I would reverse the district court's grant of summary judgment against the

government and remand for entry of summary judgment in favor of the government.