PAUL KELLY, JR., Circuit Judge,
dissenting.
The court adopts the USDA’s position that an owner is liable regardless of knowledge or fault for a sore horse. See Crawford v. USDA 50 F.3d 46, 50-51 (D.C.Cir.1995). In so doing, the court ignores the language of the statute and does not consider the language as a whole and rejects an interpretation that would require the USDA to prove that the owner is somehow responsible for the soring, either by authorizing, condoning, or remaining deliberately ignorant about it. See Lewis v. Sec’y of Agric., 73 F.3d 312, 315-16 (11th Cir.1996); Baird v. USDA 39 F.3d 131, 136 (6th Cir.1994); Burton v. USDA 683 F.2d 280, 282-83 (8th Cir.1982). According to the court, the key to this issue is contained in a phrase used in § 1824(2)(D) — “respecting a horse which is sore.” The court reasons that this phrase could not mean the same thing as “any horse which is sore,” which is used three times before in the statute. According to the court, the phrase “any horse which is sore” does not inform the reading of § 1824(2)(D); rather, “respecting a horse which is sore” means that entering, showing, or exhibiting a horse in a horse show results in liability if the horse turns out to be sore.
In my view, the court reads far too much into what appears to be ordinary language rather than perfection in draftsmanship. This novel approach to the statute is not that of the USDA, although surely the USDA will agree with the result. According to the USDA, “[wjhether [Dr.] McCloy violated the HPA turns on the meaning of the term ‘allow.’ ” Respondent’s Br. at 15. I agree, and note that several other circuits resolved the issue based upon the meaning of “allows.” Regardless of whether “respecting a horse which is sore” is surplusage, it is clear that the statute prohibits entering, showing or exhibiting a sore horse, § 1824(2)(A)-(B), and also prohibits an owner allowing such entry, show or exhibition. § 1824(2)(D).
The USDA contends that the act of entering a sore horse establishes liability under § 1824(2)(B), so in like manner § 1824(2)(D) should do the same for owners. Respondent’s Br. at 14-16. The fact that the statute differentiates between those who directly enter, show, or exhibit horses and those who do not suggests just the opposite. The USDA’s interpretation reads “allows” out of the statute. Cf. Baird, 39 F.3d at 137 n. 10 (refusing to extend Chevron deference to USDA’s interpretation of § 1824(2)(D) because it would render the term “allow” a nullity). Congress chose a more nuanced approach. The term “allow” connotes more than strict liability (or the liability of a guarantor)-aecording to the Oxford English Dictionary the term means “[t]o praise, commend, approve of,” or “[t]o admit the realization of, permit.” Oxford English Dictionary (2d ed.1989).
The undisputed testimony of Dr. McCloy was that he was not even aware that Missy would be shown on the day the horse was disqualified for being sore before the show. *454 Dr. McCloy farther offered uncontradicted testimony that he did not praise, commend, or approve of soring Missy, nor did he permit it in any meaningful sense. Rather, Dr. McCloy made unannounced visits to check on Missy and, in the JO’s own words, the USDA “did not prove that [Dr. McCloy’s] admonitions directed to Roñal Young concerning the soring of Missy constituted merely a pretext or a self-serving ruse.” Id. at 38. In light of these facts and my interpretation of § 1824(2)(D), I would hold that Dr. McCloy cannot be held liable for violating the HPA. See Lewis, 73 F.3d at 315-17.